BRENDA L. DUNAHEE, Plaintiff-Appellant, v. CHENOA WELDING AND
FABRICATION, INC., Defendant-Appellee.

Fourth District    No. 4—95—0032

Argued June 19, 1995.—Opinion filed June 30, 1995.

COOK, J., specially concurring.

Randell S. Morgan (argued), of Kinate & Morgan, P.C., of Fairbury, for appellant.

Michael J. O'Rourke (argued), of Bloomington, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Brenda Dunahee brought suit against defendant Chenoa Welding and Fabrication, Inc., under section 706.1(G) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/706.1(G) (West 1994)). Plaintiff sought a penalty against defendant for its failure to send to her, on a timely basis, child support payments withheld from the wages of defendant's employee, Lawrence Feit, plaintiff's ex-husband. The trial court rendered judgment for defendant, and plaintiff now appeals. We reverse and remand.

Plaintiff brought suit seeking a penalty against defendant for failure to comply with section 706.1(G) of the Act, which requires an employer to forward child support withheld from an employee's wages within 10 days of paying the employee. At trial, plaintiff called Kathy Wochner, secretary and treasurer of defendant. She was in charge of paying employees. She recalled receiving a certified notice

in March 1994 requiring defendant to withhold child support payments from its employee Feit's wages. She was already withholding his wages at the time. The order of withholding stated the withheld amounts must be paid within three business days, but she did not read it. She withheld Feit's wages every week, but would keep it for a period of time before forwarding it to the clerk of the court.

Defendant has only five employees: herself, her husband, her son, and two other employees. This was the first order of withholding with which she had ever been involved. She started withholding Feit's pay in December 1993, after he requested she do so. There was no court order in effect at that time. She did not know the procedure for withholding, so she called the clerk of the court's office to find out how to do so. The court order of withholding arrived in March 1994. She continued withholding the same as before.

Plaintiff testified that she received her child support checks in groups of three or four at a time prior to July 1994. She saw Wochner in a grocery store checkout line. Plaintiff asked Wochner:

> "if she knew the procedure and that I wasn't working two jobs because I thought it was a good time, it's because I need to support three kids and I need that money. And I said is there a reason why, and she said well, it's just easier and it saves on stamps, and she says I'm sorry, I didn't know the procedure, I'll get the checks right in the mail."

When the checks still took another three to four weeks to arrive, plaintiff sought legal help. She had no other contact with defendant. Although she knew defendant was not following the correct procedure after the order of withholding was entered, she did not contact it, but told Feit about the delays. She had received all the support which was due.

Plaintiff admitted, without objection, copies of checks sent by defendant to the clerk of the court.

Testifying for the defense, Wochner resumed the stand. When plaintiff talked to her in the grocery store:

> "She asked me if I took money out of [Feit's] check every week, and I said yes I do and [Feit] had been having some problems at that time, or something, he wasn't coming to work on a regular basis, and there were some weeks that I took it out and he didn't have any money left, but I did, I did take it out every week, and it was certainly (*unclear*) But anyway, she told me it would be in [Feit's] best interest if I got those checks to her every week."

Wochner believed plaintiff wanted her to get involved in the domestic dispute, which she makes a practice of not doing. Defendant's employee, Feit, never brought up the issue of withholding.

Prior to rendering judgment, the trial court noted the employer penalty provision requires the penalty be computed based on when the employer pays its employee, not when the employer pays the clerk of the court or the obligee, and plaintiff's evidence—defendant's checks to the clerk of the court—did not show when defendant paid its employee, Feit. Plaintiff believed the checks were sufficient, but moved to reopen the case to recall Wochner to the stand to clarify when defendant paid Feit. The trial court denied the motion, declaring the statute was so punitive, its application in this instance, $12,000 according to plaintiff's calculations, would shock the conscience. The trial court believed good faith by the defendant and the lack of notice given by the plaintiff must be considered in whether to award the fine. The trial court rendered judgment in favor of defendant, finding the allegations not proved. Plaintiff made an offer of proof, recalling Wochner, who testified defendant's employee, Feit, was paid the same day the money was withheld from his wages. Plaintiff now appeals, arguing the trial court's judgment was an abuse of discretion and against the manifest weight of evidence.

■ Plaintiff asserts the employer penalty provision of section 706.1(G)(1) of the Act is mandatory; defendant asserts it is not. Section 706.1(G)(1) of the Act declares:

"It shall be the duty of any payor who has been served with a copy of the specially certified order for withholding and any notice of delinquency to deduct and pay over income as provided in this subsection. *** The payor shall pay the amount withheld to the obligee or public office within 10 calendar days of the date income is paid to the obligor in accordance with the order for withholding and any subsequent notification received from the public office redirecting payments. If the payor knowingly fails to pay any amount withheld to the obligee or public office within 10 calendar days of the date income is paid to the obligor, the payor shall pay a penalty of $100 for each day that the withheld amount is not paid to the obligee or public office after the period of 10 calendar days has expired. The failure of a payor, on more than one occasion, to pay amounts withheld to the obligee or public office within 10 calendar days of the date income is not paid to the obligor creates a presumption that the payor knowingly failed to pay the amounts. This penalty may be collected in a civil action which may be brought against the payor in favor of the obligee." 750 ILCS 5/706.1(G)(1) (West 1994).

The primary rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature. In determining the legislative intent, a court should first consider the statutory language. Where the statutory language

is clear, it will be given effect without resort to other aids for construction. However, where the language is ambiguous, it is appropriate to examine the legislative history. (*People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197, 607 N.E.2d 1251, 1253.) In determining legislative intent, a court may consider the reason and necessity for the law, the evils to be remedied, and the objects to be attained. In addition, a court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result. *State Farm Fire & Casualty Co. v. Yapejian* (1992), 152 Ill. 2d 533, 541, 605 N.E.2d 539, 542.

Generally, the use of the word "shall" in a statute indicates a mandatory obligation unless the context indicates otherwise. Further, the word "shall" will not be given a permissive meaning where it is used with reference to any right or benefit to anyone, and the right and benefit depends upon giving a mandatory meaning to the word. *Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 33, 485 N.E.2d 321, 323.

■ Here, the employer penalty provision of section 706.1(G)(1) of the Act uses the word "shall," indicating a mandatory application of the penalty. Further, the penalty provides benefits to a child support recipient. Not only does the recipient receive the money from the penalty itself, but the penalty encourages a previously delinquent employer to begin to make timely payments of withheld child support. In addition, although a mandatory reading of a statute can be rebutted by the context of that statute, here the context of section 706.1 of the Act (750 ILCS 5/706.1 (West 1994)) supports a mandatory reading of the employer penalty provision.

Section 706.1 of the Act was enacted to comply with a Federal mandate requiring the States to enact a speedy and simple method of withholding wages or other income from persons owing child support obligations, as a condition of receiving Federal Aid to Families with Dependent Children funds. This was in response to the nationwide crisis of delinquent child support. (See *People ex rel. Sheppard v. Money* (1988), 124 Ill. 2d 265, 269-72, 529 N.E.2d 542, 544-45 (holding corresponding mandatory income withholding provisions of Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*) comply with constitutional due process requirements).) Illinois courts have construed provisions in section 706.1 of the Act and corresponding child support withholding provisions in other laws to be mandatory requirements, vesting no discretion in the trial court. *In re Marriage of Holmes* (1994), 260 Ill. App. 3d 836, 840, 633 N.E.2d 131, 133-34 (section 706.1 of the Act mandates trial court order additional amount withheld from obligor's wages to apply

to potential delinquency); *In re Marriage of Self* (1994), 265 Ill. App. 3d 804, 805, 638 N.E.2d 699, 700 (section 505.2(b) of the Act (750 ILCS 5/505.2(b) (West 1992)) mandates trial court order child beneficiary of child support be named as beneficiary of obligor's health insurance plan); *Sheppard*, 124 Ill. 2d at 274, 529 N.E.2d at 546 (corresponding provisions of Parentage Act mandate trial court issue order of withholding); *People ex rel. Massey v. Jones* (1992), 233 Ill. App. 3d 411, 414, 599 N.E.2d 48, 50 (corresponding provisions of Parentage Act mandate trial court designate payment amount in case of delinquency at time original order of withholding is entered).

In each of the above cases, *Holmes, Self, Sheppard,* and *Jones,* the particular provision at issue was enacted in order to comply with a Federal mandate. The federally mandated requirements for State laws particularly regarding employer withholding of the wages of a child support obligor are located at title 42, section 666, of the United States Code (see 42 U.S.C. § 666 (1988 & Supp. V 1993)) and title 45, section 303.100, of the Code of Federal Regulations (45 C.F.R. § 303.100 (1994)). These sections do not contain a requirement that the States impose a fine or penalty against an employer for failure to pay withheld wages to the obligee in a timely manner. The only mandates regarding employer liability are the employer must be held liable to the State for any amount not withheld as directed (42 U.S.C. § 666(b)(6)(C) (1988); 45 C.F.R. § 303.100(f)(1)(vi) (1994)), and the employer must be subject to a fine for discharging, failing to employ, or taking any disciplinary action against an employee whose wages are subject to garnishment for child support obligations (42 U.S.C. § 666(b)(6)(D) (1988); 45 C.F.R. § 303.100(f)(1)(v) (1994)). The Illinois legislature chose to add the employer penalty at issue here as an additional child support enforcement measure, obviously to ensure employer cooperation with the withholding mechanism. Although this employer penalty is not a Federal mandate, the fact the Illinois legislature placed this penalty within the larger mandated enforcement scheme indicates an intent the penalty provision be strictly enforced, to help combat the crisis of child support delinquency.

Moreover, a mandatory interpretation of the employer penalty provision is supported by the legislative history of that provision. Prior to the 1993 amendment of section 706.1(G) (see Pub. Act 88—94, § 2, eff. July 20, 1993 (1993 Ill. Laws 1778, 1788)), that section read "3 business days" (Ill. Rev. Stat. 1991, ch. 40, par. 706.1(G)(1)) in place of "10 calendar days" (750 ILCS 5/706.1(G)(1) (West 1994)) at each place that phrase occurs in the section now. There is no useful legislative history on the 1993 amendment which extended the time allowed for payment by an employer from 3 business days to 10

calendar days. However, the legislative debate on the original penalty provision in section 706.1(G) is as follows.

The Senate first adopted the language of the section unanimously and without debate. (87th Ill. Gen. Assem., Senate Proceedings, June 19, 1991, at 188.) In the House, Representative Frederick moved for the House to concur in Senate Amendment No. 1 on House Bill 554, where the following debate occurred:

"[REPRESENTATIVE] FREDERICK: '*** The underlying Bill dealt with automatic withholding of child support and required that this happen on the same day the employee was paid. When the Bill got to the Senate, the business community came to me and said that there was [sic] some cases where the checks could not be processed the same day and asked that I lengthen the time to three business days, which I have done. It also includes an intent on the part of the employer not to pay before the penalty is imposed. I move concurrence on Senate Amendment #1 of House Bill 554.'

SPEAKER SATTERTHWAITE: 'Representative Dunn.'

[REPRESENTATIVE] DUNN: 'Thank, you, Madam Speaker. I rise in opposition to the concurrence [m]otion. This legislation, those of you who are sensitive to employers, should look at this legislation very closely because the legislation provides for a penalty of $100.00 for each day the child support is not paid. The Sponsor has indicated that there is a provision inserted in here about intention or knowingly not paying. I haven't seen that in the language. I presume that that is so, but you must take into account especially for smaller employers who may have three or four or five employees and have the bad luck to have each of them be divorced and be a payor, and one pays weekly, one pays twice a month, one pays every two weeks, one pays once a month and the employer is supposed to be right on top of each of those situations and failure to send a child support payment in subjects the employer to a penalty not of $100.00, but of a $100.00 each day that that payment is late. There is some confusion about whether mailing the check in complies, so not only is there confusion, but this penalty is way, way too stiff for this legislation. So I would urge the members not to support this legislation in its present configuration.'

SPEAKER SATTERTHWAITE: 'Any further discussion? Representative Frederick to close.'

[REPRESENTATIVE] FREDERICK: 'Yes. Thank you, Madam Speaker. The penalty is in the Bill right now and in order...for it to be applied, there has to be an employer that knowingly withheld the payment to the ex-wives. So, I don't see this as a real

negative in the Bill, and I really ask for your support and concurrence on Senate Amendment #1 on House Bill 554.' " (87th Ill. Gen. Assem., House Proceedings, June 28, 1991, at 32-34.) The Bill passed 109 to 1, with one member voting present.

Representative Dunn's example appeared to be one where the employer innocently or negligently failed to send in the withheld child support. Representative Frederick's response to Representative Dunn's example indicates he believed the penalty would not apply to the example, but only where the employer *knew* it was withholding a child support payment from the intended recipient. Thus, the legislative history indicates the legislature intended the penalty to be applied where an employer knowingly failed to make a timely payment of withheld child support, and there is nothing to indicate the legislature intended exceptions to apply. The parties do not dispute the statute on its face applies here: defendant knowingly failed to send in many of the withheld child support payments within 10 days of paying its employee.

Defendant, however, argues the penalty is unjust as applied against a small business such as itself and would result in hardship. Defendant overlooks noncompliance with a child support withholding order by an employer places a substantial burden on a child support obligee, who might be forced to postpone purchasing essentials such as food or medicine for a child until the overdue payment arrives. Thus, an employer defendant cannot be heard to complain about hardship to itself caused by payment of a penalty to a plaintiff where that employer defendant's noncompliance with a court order caused hardship on the plaintiff. Further, the fact the penalty may in some instances be a "windfall" for a plaintiff is irrelevant, because the penalty will serve to compensate the plaintiff for any hardship and will deter future noncompliance by the employer.

■ Defendant next argues the purpose of section 706.1(G) would not be served by the application of a penalty in a situation such as exists here because the penalty's purpose is to ensure obligees receive the support they are owed, and here, plaintiff has received all the support she is owed. It is true there is no child support arrearage in this case. However, the employer penalty provision seeks not only to ensure a child support obligee receives the owed child support payments, but also that the obligee receives the support payments *in a timely manner*. Here, defendant did *not* pay plaintiff in a timely manner. Therefore, the imposition of a penalty in a case such as this *would* serve the purpose of section 706.1(G). Indeed, without the application of a penalty, employers would have an incentive to *not* send in a withheld child support payment in a timely manner. The longer

a withheld child support check is not mailed to the obligee, the longer those funds are available for the employer to use to its own advantage, either to help support the operation of its business activities, or to allow invested money to yield a higher return.

■ Defendant finally notes it would have been a minimal burden for plaintiff to inform it of its noncompliance with the proper withholding procedure. However, regardless of the slight weight of such a burden, section 706.1(G) places no such burden on the child support obligee. Such a burden should not be placed on a child support obligee where the employer *already* has the means at its disposal to learn the proper procedure: it simply could read the order of withholding. The order of withholding defendant acknowledges receiving informed it of the time limit for payment of withheld wages. Defendant was given notice of the time limit. A court cannot look favorably upon an employer which does not read or comply with court orders with which it is served. This is especially true where, as here, compliance with the particular court order involved places only a minimal burden on an employer. Defendant merely needed to put each week's check in a stamped envelope addressed to the appropriate party, and place the envelope in any corner mailbox.

The language of section 706.1(G), its legislative history, and public policy all weigh heavily in favor of strict application of the employer penalty provision. However, we need not decide whether that provision is mandatory in all instances where an employer qualifies for application of the penalty. If there is an instance where an employer could evade application of the penalty, this is not that case. Contrary to defendant's assertion, the evidence does not show it complied with the "spirit" of the law. Here, notwithstanding defendant's initial voluntary withholding, defendant admits receiving the order of withholding which instructed it to make timely payments. Defendant further admits consistent noncompliance with the court's order by intentionally forwarding the payments only once a month for several months. At no time did defendant receive an instruction from any party it was permissible to deviate from the court's directives.

Defendant has proffered no compelling excuse for its noncompliance, but instead has merely claimed ignorance coupled with a wish to avoid the paltry cost of three additional postage stamps per month. Although defendant wrote out a check each week, by mailing the checks only once each month, defendant maintained access to the withheld child support funds in its accounts, to its own benefit. In the meantime, plaintiff and her children suffered hardship waiting for the overdue payments. Moreover, defendant's practice continued

even *after* plaintiff informed defendant's treasurer of her need for timely receipt of the withheld child support payments. In short, the trial court's failure to apply the penalty here was an abuse of discretion.

▮ Plaintiff also argues the trial court erred by refusing to reopen the case to receive evidence as to when defendant's employee was paid. In deciding whether to allow a party to reopen a case, a trial court should take into consideration such factors as whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, whether the adverse party will be surprised or unfairly prejudiced by the new evidence, whether the new evidence is of the utmost importance to the movant's case, and whether any cogent reasons exist to justify denying the request. Generally, the decision to reopen a case to allow for the introduction of additional evidence rests within the sound discretion of the trial court, and the trial court's decision will not be disturbed by a reviewing court absent an abuse of discretion. (*Davis v. States Drywall & Painting* (1994), 268 Ill. App. 3d 704, 716, 645 N.E.2d 304, 312.) In addition, greater liberty should be allowed in reopening proofs when the case is tried before the court without a jury. (*In re Marriage of Phillips* (1992), 229 Ill. App. 3d 809, 822, 594 N.E.2d 353, 362.) Most cases discussing this issue involve a defendant's appeal from a trial court's allowing the reopening of a case. These courts have held a trial court does not abuse its discretion when it reopens a case to merely clarify the record on an evidentiary matter of utmost importance that was inadvertently excluded. See, *e.g., United States Department of Housing & Urban Development v. Anderson* (1988), 178 Ill. App. 3d 752, 755, 533 N.E.2d 919, 921.

According to section 706.1(G) of the Act, the employer penalty is calculated beginning after "10 calendar days of the date income is paid to the obligor." (750 ILCS 5/706.1(G)(1) (West 1994).) At trial, the plaintiff introduced evidence only of when the child support was withheld from the obligor employee's pay, but not when the obligor employee was himself paid. After the trial court, before rendering judgment, stated the plaintiff had failed to enter this necessary evidence, the plaintiff moved to reopen the case to introduce the evidence, and the trial court denied the motion.

Here, all the factors used in deciding whether to reopen a case weigh in favor of plaintiff. First, plaintiff's failure to introduce the evidence was because of inadvertence rather than calculated risk. Plaintiff overlooked the statute's requirement the employer penalty be calculated not from the time the child support is withheld, but from the time the employee is paid. Second, the admission of the evi-

dence would not result in any prejudice or unfair surprise to defendant. The employer penalty was the only issue in the case, so defendant must have been aware plaintiff would attempt to present evidence of when the obliger employee was paid. Third, the new evidence was of the utmost importance to plaintiff's case. Without establishing the date defendant paid its obliger employee, plaintiff could not establish whether or how much penalty was owed. Fourth, there was no cogent reason to refuse to reopen the case. The trial had taken only a short time, judgment had not yet been rendered, and the treasurer was still available to testify. The only reason the trial court stated for its denial of the motion was it believed defendant should prevail anyway. The trial court abused its discretion in denying plaintiff's motion to reopen the case.

The judgment of the trial court is reversed and remanded for calculation of the penalty and the entry of judgment for plaintiff in that amount.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE COOK, specially concurring:
I agree that section 706.1 of the Act requires the imposition of a $100-per-day penalty in this case. I disagree with any implication in the majority opinion that section 706.1 is necessary or appropriate.