CHILD SUPPORT RECOVERY
SERVICES, INC., ex rel. S.C.,
A Minor, Appellant,

v.

INN AT THE WATERFRONT,
INC., Appellee.

No. S–8691.

Supreme Court of Alaska.

Aug. 18, 2000.

Kenneth Kirk, Anchorage, for Appellant.

Dennis C. Bailey, Dillon & Findley, Juneau, for Appellee.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Amicus Curiae State of Alaska, Department of Revenue, Child Support Enforcement Division.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

PER CURIAM.

Child Support Recovery Services, Inc. (CSRS) appeals the grant of summary judgment by the superior court in favor of Inn at the Waterfront, Inc. For the reasons stated in Judge Larry Weeks's thorough and

thoughtful summary judgment decision, relevant portions of which we set out in Appendix A, we affirm the grant of summary judgment. We add the following with respect to points specifically raised on the appeal:

1. At oral argument, counsel for appellant CSRS abandoned reliance on AS 25.27.260(b).[1] Accordingly, we have excised Judge Weeks's analysis of the legislature's 1994 amendment of AS 25.27.260, which added subsection (b).

2. CSRS first appeared in this case in 1993 when the Child Support Enforcement Division assigned its enforcement right to CSRS. The sole defendant at the time, Cullinane, did not object to this substitution, and the superior court allowed it. No question of CSRS's standing to pursue this case was raised until the superior court's summary judgment ruling. There, Judge Weeks ruled:

> · Finally, AS 25.27.260(b) which permits recovery by an individual as opposed to the state, was not enacted until a year after the last [order to withhold and deliver] was served in this case. The court believes that this fact precludes the individual plaintiff CSR[S] from recovery.

CSRS appealed the superior court's conclusion that it lacked standing to bring this action and argued in this court that Inn at the Waterfront should be equitably estopped from arguing lack of standing. Because at oral argument CSRS abandoned reliance on AS 25.27.260(b), and because we conclude that summary judgment was properly granted on the merits, we do not address CSRS's argument that Inn at the Waterfront should be equitably estopped from arguing that CSRS did not have the right to maintain its action. For this reason, and because the parties have not briefed the issue, we decline to address whether the state may assign its enforcement right to a private collection agency such as CSRS.

The judgment entered by the superior court is AFFIRMED.

## APPENDIX A **

### MEMORANDUM AND ORDER

### I. INTRODUCTION

This case is before the court on defendant Inn at the Waterfront's motion for summary judgment, or in the alternative, for relief from judgment under Civil Rule 60(b)(5), and for costs and fees. CSRS opposes both motions. Resolution of the pending issues depends on the court's interpretation of AS 25.27.260: Civil liability upon failure to comply with an order or lien.

### A. Factual Background

In 1981, a Nevada court established a child support obligation for William J. Cullinane, the non-custodial parent of a minor child, S.C. In 1986, the Alaska Child Support Enforcement Division (CSED) began efforts to collect unpaid child support due under the Nevada order. Those efforts included the issuance of three Orders to Withhold [Income] and Deliver Property (WIDs) to Inn at the Waterfront, Inc., based on CSED's understanding that Inn was Cullinane's employer. The WIDs were issued pursuant to AS 25.27.250, formerly AS 47.23.250.[3]

---

1. The principal effect of this provision, for purposes of this discussion, was to permit recovery by an individual, as opposed to the state. Alaska Statute 25.27.260(b) provides:

 (b) A person, political subdivision, or department of the state that intentionally fails or refuses to honor a properly served income withholding order under AS 25.27.062 that is not being enforced by the agency is liable to the obligee in an amount equal to 100 percent of the amount ordered to be withheld together with costs, interest, and reasonable attorney fees.

** As reprinted in this Appendix, the superior court's summary judgment order has been redacted to delete extraneous discussion. The original labeling of the section headings of the superior court order has been retained, but footnotes and page numbers have been renumbered. The order has also been technically edited in accordance with this court's Manual of Technical Rules for Publication. In addition, quotations of relevant statutory provisions have been added in some footnotes.

3. CSED may issue a WID upon "reason to believe that there is in the possession of a person, political subdivision, or department of the state property that is due, owing or belonging to the obligor." AS 25.27.250(c). The WID must be properly served and contain all necessary information. See AS 25.27.250(d). The recipient of the WID is given 14 days to respond. This gives

The first WID, dated May 12, 1988, instructed Inn *inter alia* to withhold and deliver to CSED all of Cullinane's real or personal property in its possession, fifty-five percent of his wages and earnings when payable, and fifty percent of any unemployment insurance benefits when payable, up to $23,321.74, the amount of arrearage, interest and penalties due as of the date of the WID. The second WID, dated April 5, 1989, set forth the same withholding instructions but raised the maximum allowable withholding to $31,307.74 to reflect Cullinane's arrearage, interest and penalties due as of the date of the second WID. The third WID, dated September 30, 1993, instructed Inn to withhold and deliver by the same terms as the first two WIDs, with the exception that Inn should withhold sixty percent of Cullinane's wages and earnings when payable, up to $57,455.05, the amount of arrearage, interest and penalties due as of the date of the third WID. The legal sufficiency of the WIDs has not been argued. Likewise, Inn has not argued about whether it received the WIDs or whether it failed to withhold or deliver Cullinane's income or assets in its possession as required by the terms of the WIDs. On a motion for summary judgment the court infers CSRS prevails on this issue.[4]

CSED initiated litigation in 1989 against Cullinane. Additional parties, including Inn, Ann House and Cullinane Corporation, were joined in the litigation as a result of their association with Cullinane. Prosecution of the case was assumed by CSRS in 1993. On February 27, 1995, in the context of a cross motion for summary judgment on the issue of liability, this court determined Inn was "liable for any unpaid WIDs accruing from the time the first WID was served."

Cullinane's outstanding arrearage obligation was reduced to judgment on January 2, 1996. On July 22, 1996, Cullinane paid $70,653.33 in full satisfaction of the outstanding judgment for child support arrearage plus interest and costs of execution.[5] CSED issued a notice of intent to close the case, addressed to Cullinane, on November 6, 1996. CSED filed notice of full satisfaction of the judgment against Cullinane on November 15, 1996. On March 12, 1997, CSED notified Inn that the September 30, 1993 withholding order (WID No. 3) was terminated.

B. *Summary of Parties' Arguments*

Inn argues summary judgment is appropriate in this case because it was liable only for "unpaid WIDs" which no longer exist. Inn interprets AS 25.27.260 to impose joint and several liability on the obligor-employee and his or her employer for the accrued and unpaid support arrearage indicated in the WIDs. According to Inn, this court's January 1996 judgment was "fully executable either against Mr. Cullinane or Inn to the extent of the unpaid WIDs." According to Inn, satisfaction of the underlying judgment against Cullinane necessarily relieves Inn of continuing liability.

CSRS argues Inn's liability for failure to comply with the WIDs in violation of AS 25.27.260 is continuing and independent of Cullinane's liability. It says that Inn's liability may be as much as $70,653.33. According to CSRS, Cullinane's satisfaction of the underlying arrearage obligation terminated the withholding requirement of the WIDs but did not erase Inn's liability based on its previous non-compliance.

Inn also argues AS 25.27.260 should not be construed as a penalty absent express legislative intent. Inn argues against permitting

the employer an opportunity to communicate to the state in the event the employer no longer employs the obligor or for some other reason does not believe it should be bound by the WID. The state expressly assumes liability "for such actions [by] people withholding or delivering money or property to the agency in accordance with this section." Former AS 25.27.250(h).

**4.** *See Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990).

**5.** According to Ann House, president and principal owner of defendant Inn, Cullinane obtained the funds to satisfy the judgment as part of a $100,000 loan assumed by Inn in July 1996. *See* Affidavit of Ann House, filed December 15, 1997 in support of Inn's reply to motion for summary judgment.

a double recovery or a civil penalty in excess of the criminal fine provided in AS 11.51.122 for "aiding the nonpayment of child support." [6] CSRS argues AS 25.27.260 should be construed as a penalty in that its purpose is to encourage employers to obey WIDs. According to CSRS, employers should not be permitted to disobey WIDs without consequence.

Inn argues a construction of AS 25.27.260 which permits double recovery is inconsistent with other provisions of the child support enforcement act and the statute's express purpose of enforcing the child support obligations of responsible parents. CSRS argues it does not seek a double recovery from the same person. CSRS also argues the policies underlying the legislative enactment of strong enforcement mechanisms would warrant a double recovery.

As an alternative to summary judgment, Inn argues the full satisfaction of the arrearage obligation underlying the WIDs operates as a release of Inn's liability and Inn should therefore be granted relief from judgment pursuant to Civil Rule 60(b)(5). CSRS argues relief from judgment under Civil Rule 60(b)(5) is inappropriate because no judgment yet exists against Inn from which the court can give it relief.

### C. *Summary Judgment and Civil Rule 60(b) Standards*

The court may grant summary judgment pursuant to Civil Rule 56 when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[7] Once the moving party establishes by competent evidence the absence of genuine issues of material fact, the non-moving party must clearly and specifically demonstrate that it can produce admissible evidence disputing the moving party's evidence.[8]

All reasonable inferences of fact are drawn in favor of the non-moving party.[9]

Civil Rule 60(b)(5) provides for relief from a final judgment, order, or proceeding where "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

### II. *ISSUE*

*Is Inn's civil liability under AS 25.27.260 for failure to comply with the WIDs continuing and independent of or joint and several with the full satisfaction of William Cullinane's child support judgment?*

### III. *DISCUSSION*

*The legislative intent of AS 25.27.260 is ambiguous, but suggests that Inn's liability for failure to comply with the WIDs is joint and several with William Cullinane's support obligation.*

In the context of a prior summary judgment motion by defendant Ann House, this court found Inn liable for its failure to comply with the terms of the three WIDs it received concerning Cullinane. That finding was based on application of AS 25.27.260 to facts in this case which are not in dispute. Alaska Statute 25.27.260 provides:

**Civil liability upon failure to comply with an order or lien.** (a) *If a person, political subdivision, or department of the state (1) fails to make an answer to an order to withhold and deliver within the time prescribed in AS 25.27.250; (2) fails or refuses to deliver property in accordance with an order issued under AS 25.27.250; (3) pays over, releases, sells, transfers, or conveys real property subject to a lien recorded under AS 25.27.230 to or for the benefit of the obligor or any other person; (4) fails or refuses to surrender*

---

6. Inn does not indicate whether or not it has been criminally fined.

7. *See Geolar, Inc. v. Gilbert/Commonwealth Inc. of Mich.,* 874 P.2d 937, 940 n. 5 (Alaska 1994) (citations omitted).

8. *See Southeast Alaska Constr. Co. v. State, Dep't of Transp. and Pub. Facilities,* 791 P.2d 339, 342 (Alaska 1990) (citations omitted).

9. *See Sea Lion Corp.,* 787 P.2d at 116 (citation omitted).

upon demand property attached; or (5) intentionally fails or refuses to honor an assignment of wages or an income withholding order under AS 25.27.062 that was served by the agency through personal service by a process server or through certified mail, return receipt requested, *the person,* political subdivision, or department of the state *is liable to the agency* in an amount equal to 100 percent of the amount constituting the basis of the lien, order to withhold and deliver, attachment, or withholding of wages or income, together with costs, interest, and reasonable attorney fees. (Emphasis added.)

Inn's liability arose from its failure to answer and to withhold and deliver income and property in accordance with the three WIDs issued pursuant to AS 25.27.250.[10] Inn does not contest its liability for "unpaid WIDs" as established in this court's order of February 1995, but argues its liability has since been extinguished by Cullinane's payment in full of his child support arrearage. The legislative intent behind Chapter 27 of Title 25 and the meaning conveyed by the statute's language and context are ambiguous, but do support a finding of joint and several liability.

### A. *Legislative Intent*

In interpreting a statute, the court's goal is to give effect to the intent of the law-making body with due regard for the meaning that the language employed in the statute conveys to others.[11] Alaska Statute 25.27.260 is one of numerous enforcement provisions enacted in 1977 by the state legislature to increase the effectiveness of child support collections. The express purpose of the 1977 act is as follows:

PURPOSE. Common law and statutory procedures governing the remedies for enforcement of support for financially dependent minor children by responsible parents have not proven sufficiently effective or efficient to cope with the increasing incidence of financial dependency. The increasing workload of courts, district attorneys, and the attorney general has made such remedies uncertain, slow and inadequate, thereby resulting in a growing burden on the financial resources of the state which is required to provide public assistance grants for basic maintenance requirements when parents fail to meet their primary obligations. The state, therefore, exercising its police and sovereign power, declares that the common law and Alaska statutes pertaining to the establishment and enforcement of child support obligations shall be augmented by additional remedies in order to meet the needs of minor children. It is declared to be the public policy of this state that this Act be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently born by the general citizenry through welfare and welfare-related programs.[12]

Subsequent amendments to the provisions of Chapter 27 have been accompanied by similar statements of purpose and intent:

LEGISLATIVE FINDINGS AND PURPOSE. (a) The legislature finds that the effect on the general public of the failure of parents to support their children is vast and far reaching. The harmful effects of unpaid child support touch not only the poor but reach far beyond, diminishing the overall quality of life for all Alaskans. The purpose of the amendments in this Act is

*Cook v. Botelho,* 921 P.2d 1126, 1129 (Alaska 1996) (citation omitted).

---

**10.** At oral argument CSRS argued the basis for Inn's liability under AS 25.27.260 was Inn's wilful and intentional failure or refusal to obey the WIDs. The "intentional" language in (a)(5) refers to wage assignment and income withholding orders under AS 25.27.062, not WIDs. The court finds Inn's liability arises under AS 25.27.260(a)(1) and (2).

**11.** *See Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 787 (Alaska 1996) (citation omitted);

**12.** Ch. 126, § 1, SLA 1977. The court does not agree with Inn's argument that the language in this statement precludes a recovery from someone other than the "responsible" obligor-parent. This position is also in conflict with Inn's argument that AS 25.27.260 imposes joint and several liability on an employer.

to enhance the efforts of those persons who seek to enforce the payment of child support obligations by noncustodial parents having the duty of support.

. . . .

(c) The legislature also finds that the hardship experienced by children in families who may rely on support from a noncustodial parent should not be a necessary condition that must be endured by those families. Statutory tools have been provided to enable the child support enforcement agency to collect unpaid child support owed by a parent, including the authority to order an employer to withhold and deliver part of an employee's earnings. This tool, however, is not usable against a self-employed parent who owes child support. The legislature finds that if delinquency in making child support payments could be reflected in a person's credit history, an effective collection and deterrent tool would exist—a tool that would be effective against those self-employed parents who owe child support.[13]

The Senate adopted the following letter of intent to accompany the 1994 amendments to the Act:

Apart from the statutory changes enacted in this bill, the legislature wishes to convey its intent that the Child Support Enforcement Division distinguish between obligors, employers and others who voluntarily meet their support, withholding or other obligations under this chapter and those who do not. To the extent allowed by this chapter and federal law, this distinction should be actively reflected in all agency communications as well as in the nature, extent and timing of enforcement actions, subject to reasonable precautions to avoid uncollectability of funds necessary for support.[14]

Chapter 27 as amended was enacted to satisfy the federal mandate for compliance with 42 U.S.C. §§ 651—667.[15] The relevant portion of the federal statute, 42 U.S.C. § 666(b)(6)(C), requires:

The employer must be held liable to the State for any amount which such employer fails to withhold from income due an employee following receipt by such employer of proper notice under [the previous subparagraph requiring employers to withhold and deliver the amount specified in the notice to the agency or other entity authorized to collect].

Federal regulations promulgated by the federal Office of Child Support Enforcement also require:

(iv) That the withholding [provision created by the state] is binding upon the employer until further notice by the State; . . .

(vi) That, if the employer fails to withhold wages in accordance with the provisions of the notice, the employer is liable for the accumulated amount the employer should have withheld from the absent parent's wages[.][16]

Thus, the express intent of the legislature with regard to the provisions of Chapter 27 has consistently been to increase the ability of the state to enforce child support obligations and, toward that goal, to impose federally mandated liability on employers who fail to aid in that enforcement effort. The imposition of joint and several liability on the employer comports with that intent. The employer becomes a readily available source of funds in cases where funds are not available from the obligor. This responsibility on employers is new and significant. It is a "penalty" even with joint and several liability; the non-compliant employer ends up paying the employee's child support.

---

**13.** Ch. 144, § 1, SLA 1984. The 1984 act added AS 25.27.273, Reporting of payment information concerning delinquent obligors.

**14.** Committee Substitute for Senate Bill (C.S.S.B.) 190, 18th Leg.2d Sess. (1994), 1994 Senate Journal 3463.

**15.** Alaska's receipt of federal funding for Aid to Families with Dependent Children has been conditioned on compliance with the child support enforcement provisions of federal Title 42 and the regulations promulgated thereunder.

**16.** 45 C.F.R. § 303.100(f)(iv), (vi) (1997).

## B. *Statutory Enforcement Obligations*

In effect, the state has recruited employers as private child support enforcement agencies. The WID statute is one of several provisions in Chapter 27 which impose enforcement obligations on employers. For example, AS 25.27.062 [17] provides for income withholding orders which must be implemented by employers. Alaska Statute 25.27.063 [18] limits an employer's discretion with regard to health care coverage required under a medical support order. [19] Alaska Statute 25.27.070 provides for assignment of wages which must be implemented by the employer. [20] Alaska Statute 25.27.062(k) re-

---

17. AS 25.27.062 provides, in relevant part:

(a) A judgment, court order, or order of the agency under this chapter providing for support must contain an income withholding order. Except as provided in (m) of this section, the income withholding order must provide for immediate income withholding if the support order is

(1) being enforced by the agency and was issued or modified on or after July 8, 1994; or

(2) not being enforced by the agency and was issued on or after July 8, 1994.

(b) An income withholding order must direct the obligor, the obligor's employer, future employer, and any person, political subdivision, or department of the state to withhold money due or to be due the obligor and pay the money to the agency, in an amount determined under (i) of this section. A court that issues a support order on or after July 8, 1994 shall send a copy of the order to the agency.

18. AS 25.27.063 provides:

(a) A medical support order issued under AS 25.27.020(a)(9) or 25.27.060(c) must require that the obligor provide health care coverage for the child to whom the duty of support is owed.

(b) If an obligor who is required to provide health care coverage under a medical support order is eligible for family health coverage through an employer, the court or agency issuing the medical support order shall send a copy of the medical support order to the employer. If the agency has notice that the obligor has changed or will be changing employment and is or will be eligible for family health coverage through the new employer, the agency shall send a copy of the medical support order to the new employer.

(c) An employer who receives a copy of a medical support order under (b) of this section

(1) shall allow the employee named in the order to enroll the child under the family coverage without regard to restrictions relating to enrollment periods if the child is otherwise eligible and is not already enrolled under the family coverage;

(2) shall, if the employee fails to apply for enrollment of a child under (1) of this subsection, enroll the child under the employee's family coverage upon application by the child's other parent or custodian, the child support enforcement agency, or the Department of Health and Social Services;

(3) may not disenroll or eliminate coverage of the child while the employee is still employed by the employer unless the employer has eliminated family health coverage for all of its employees or has received written evidence that

(A) the employee is no longer required by court order or administrative order to provide the child's insurance coverage; or

(B) the child is or will be enrolled in comparable health coverage through another insurer that will take effect not later than the effective date of the disenrollment or elimination of coverage; and

(4) shall withhold from the employee's compensation the employee's share, if any, of premiums for health coverage to the extent permitted under 15 U.S.C. 1673(b) (Consumer Credit Protection Act) and pay the withheld amount to the appropriate insurer; if federal regulations allow the employer to withhold less than the employee's share of the insurance premium, the employer may withhold the lesser amount and pay it to the appropriate insurer.

Effective July 1, 2001, subsection (b) will provide:

(b) If an obligor who is required to provide health care coverage under a medical support order is eligible for family health coverage through an employer doing business in the state, the court or agency issuing the medical support order shall send a copy of the medical support order to the employer.

Ch. 132, § 54(b), SLA 1998.

19. The employer must permit enrollment regardless of restrictions relating to enrollment periods and cannot disenroll or eliminate a child's coverage without satisfying certain statutory requirements.

20. AS 25.27.070 provides:

(a) In a proceeding in which the court has ordered either or both parents to pay for the support of a child, the court may, on its own motion or motion of a party or the agency on behalf of a party, after notice and an opportunity for hearing, order either parent or both parents to assign to the custodian of the child that portion of salary or wages of either parent due them currently and in the future sufficient to pay the amount ordered by the court for the support, maintenance, nurture and education of the child.

(b) The order of assignment is binding upon an employer upon service of a copy of the

quires employers subject to withholding orders to maintain independent records on obligor-employees and notify CSED in the event of termination.[21] Alaska Statute 25.27.075 requires employers with 20 or more employees to report hirings to CSED.[22]

These statutory enforcement obligations are not voluntary; an employer is subject to civil penalties and liability for failure to comply. In addition to civil liability under AS 25.27.260, an employer is subject to a civil penalty of up to $1,000 for failure to comply with the reporting statute.[23] An employer is subject to a maximum $1,000 civil penalty for retaliatory discharge of an obligor-employee based on receipt of a withholding or reporting order.[24] The WID provision likewise provides for employer liability for failure to comply. Alaska Statute 25.27.250(j) provides: "A person, political subdivision, or department that fails to comply with an order to withhold and deliver served under this subsection is subject to penalties under AS 25.27.260." Imposition of this liability is a

significant change to child support enforcement law and provides material benefit to the state's ability to collect support. The state has the option of pursuing recovery from the obligor and/or the non-compliant employer. In either event, the support obligation may be met.

### C. *Statute Creates Joint, not Independent Liability*

Under AS 25.27.260(a), liability is measured by the extent of the employer's non-compliance with the WID. A noncompliant employer is liable "to the agency" for "100 percent of the amount" *due* under the WID, plus costs, interest and fees.[25] Each of the WIDs expressly state: "this order is binding until you receive a notice of satisfaction of requirement from the State of Alaska." Prior to receiving notice of satisfaction, the employer can satisfy its obligation by "delivery to the agency of the money or other property due, owing, or belonging to the obligor."[26] Property turned over to the state is held in

---

order upon the employer and until further order of the court. The employer may, for each payment made under the order, deduct $1 from other wages or salary owed to the employee.

(c) The assignment made under court order has priority as against an attachment, execution or other assignment unless otherwise ordered by the court.

(d) An employer may not terminate an employee's employment because wages of the employee are subject to an order under this section.

**21.** AS 25.27.062(k) provides:

An employer who is withholding income of an obligor under an order that provides that the withheld income shall be paid to the agency shall notify the agency promptly when the obligor gives or receives notice of termination of employment and provide to the agency the obligor's last known home address and the name and address of the obligor's new employer, if known. The employer shall keep a record of the order to withhold income from the obligor for three years after the employer notifies the agency that the obligor has terminated employment. If, within that three-year period, the obligor is reemployed by the former employer, the employer shall immediately implement the order against the obligor's earnings unless the employer has received notice from the agency that the order is no longer applicable to the obligor. If the obligor is reemployed by the former employer after that three-year

period, the employer is not required to implement a withholding order against the obligor's earnings until the employer receives a new order to withhold the obligor's income under this chapter.

**22.** AS 25.27.075 provides, in relevant part:

(a) An employer doing business in the state shall report to the agency the hiring, rehiring, or return to work of each employee. The report shall be made within the time limits set out in (b) of this section. The report must contain the name, address, and social security number of the newly hired employee, the name and address of the employer, and the identifying number assigned to the employer by the United States Department of the Treasury, Internal Revenue Service.

**23.** *See* Ch. 132, § 54(b), SLA 1998 (stating the amended AS 25.27.075(h), which becomes effective July 1, 2001).

**24.** AS 25.27.062(f).

**25.** AS 25.27.260(a).

**26.** AS 25.27.250(g); *see also* AS 25.27.253(a) ("A person, political subdivision, or department of the state shall withhold the earnings of the obligor subject to an order or lien at each succeeding interval of payment until the entire amount of the debt stated in the order to withhold and deliver has been withheld.").

trust for application against the liability of the obligor or for return to the obligor depending on a final determination of liability or nonliability under the chapter.[27]

The employer's liability for failure to comply therefore depends on the terms of the WID. In a case where CSED issues a WID and pursues a recovery against the employer within a relatively short period of time, the employer's liability would be limited. The enforcement statute in a case like that would operate like a civil contempt order; the employer could avoid increased liability by complying with the WID. This is not that type of case.

In this case, Inn failed to withhold or deliver beginning in May 1988. Inn's liability under the statute potentially equaled Cullinane's $70,000 support arrears obligation. To permit CSRS to recover a windfall of $70,000 from an employer is a new and onerous burden and should be found only if it is clear that the legislature intended that burden. Neither the express legislative intent nor the language of the statute supports this application of the penalty.

In Alaska, the law tries to avoid double recovery unless it is clearly intended as a policy matter.[28] Reading AS 25.27.260 to create joint and several liability for the *unpaid* WIDs in this case is consistent with that policy in the law. The court believes Inn is liable for unpaid WIDs under the statute. There are now no unpaid WIDs.

### D. *Limited Case Law from Other Jurisdictions Suggests Reluctance to Impose Liability*

The Alaska Supreme Court has not construed AS 25.27.260, and there are very few cases dealing with similar statutes in other jurisdictions. This may be a function of judicial reluctance to recognize this form of statutory liability. In any event, the federal mandate is very broad and the resulting state statutes are widely variant. As noted below, some state statutes provide for liability to the obligee instead of or in addition to liability to the state. Several provide for a specific fine while others appear to rely on traditional contempt proceedings to enforce the support orders.

In *Dunahee v. Chenoa Welding & Fabrication, Inc.*, the court imposed a statutory $100 per day fine on an employer who failed to timely comply with a withholding order.[29] Although the applicable statute required the employer to forward withheld child support "within 10 days of paying the employee," [30] the employer wrote out a check each week but only mailed them once a month to the obligee.[31] The obligee sued to impose the statutory penalty.[32]

The court considered the statute's legislative history and the federal mandate of Title 42 before concluding the imposition of a penalty was appropriate.[33] According to the court, "the penalty will serve to compensate the plaintiff for any hardship and will deter future noncompliance by the employer." [34] The court also noted,

> without the application of a penalty, employers would have an incentive to *not* send in a withheld child support payment in a timely manner. The longer a withheld child support check is not mailed to the obligee, the longer those funds are available for the employer to use to its own advantage.[35]

**27.** *See* AS 25.27.250(f).

**28.** *See Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1334 (Alaska 1995) (citation omitted). *See also State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1158–59 (Alaska 1989); *Murray v. Feight*, 741 P.2d 1148, 1160 (Alaska 1987); *Schreiner v. Fruit*, 519 P.2d 462, 466 (Alaska 1974).

**29.** 273 Ill.App.3d 201, 209 Ill.Dec. 898, 652 N.E.2d 438 (1995). Here, the employer paid the withheld wages directly to the obligee—this is essentially a wage assignment although the court uses the term "withholding."

**30.** *Id.* at 441, 209 Ill.Dec. 898.

**31.** *Id.* at 445, 209 Ill.Dec. 898.

**32.** *See id.* at 440, 209 Ill.Dec. 898.

**33.** *See id.* at 442–45, 209 Ill.Dec. 898.

**34.** *Id.* at 444, 209 Ill.Dec. 898.

**35.** *Id.* at 444–45, 209 Ill.Dec. 898.

In *Crenshaw v. Refuse Service, Inc.,*[36] the Missouri Court of Appeals considered a case arising from a contempt prosecution by the county attorney against an employer, Refuse Service, Inc., for failure to comply with an Order to Withhold and Pay Over issued by the Division of Child Support Enforcement. In dicta, the court noted the Missouri statute "imposes liability on an employer who fails or refuses to withhold or pay over the amounts as ordered. Under subsection 8, the employer is liable to the party holding the support rights for the amount which should have been withheld and paid over under the order."[37] The statute authorizes an action by the director of the enforcement department against the employer or "other payor."[38] The Missouri statute provides for a fine, not to exceed $500, in addition to potential liability for "the amounts to be withheld or paid, court costs and reasonable attorney's fees."[39]

However, the *Crenshaw* court did not impose either the fine or the liability. Instead it held the contempt order was not a "final judgment" until enforced by actual incarceration or imposition of a per diem fine.[40] Therefore, the court found the order was not amenable to appellate review and dismissed the appeal.[41]

In *Burrs v. Burrs,*[42] the Court of Appeals of Ohio, Second District, affirmed a trial court judgment fining a corporate employer and holding it civilly liable for failure to obey a notification requirement of a withholding order issued by the Montgomery County Bureau of Support. The Ohio statute required an employer to notify the county enforcement agency of any lump-sum payments over $500 to be paid to an obligor-employee.[43] The holding focused on the necessary mental state for the corporate employer, but the court noted a distinction between the fine, which it considered "in the nature of a criminal contempt, since ... it is neither intended to coerce future compliance nor to compensate [the obligee] for [the employer's] past failure to comply."[44] By contrast, the court noted the employer's statutory liability "would appear to be in the nature of a civil contempt."[45] The employer's civil liability was measured by the total amount of the arrearage in child support and alimony.[46]

Although the court did not directly address the issue, the Ohio notification statute in *Burrs* appears to impose joint and several liability. The purpose of the notification statute is to prevent disbursements to the obligor-employee which should go to the obligee under the support order. In the event the employer does not notify the support enforcement agency and the money is paid to the obligor, the employer is liable to the extent the money disbursed could have satisfied the arrearages. Arguably, the same logic could be applied to the Alaska WID statute.

These cases illustrate the difficult situation courts face when construing statutes like AS 25.27.260. The Alaska legislature provided for a specific penalty amount *in addition to other duties* in AS 25.27.062(j), the income withholding order statute. If they had wanted to make sure AS 25.27.260 provided for an additional penalty above and beyond joint liability the legislature could have said so. It did not. The lack of guidance from other jurisdictions reinforces this court's conclusion to not find independent liability or allow a double recovery in this case under that statute absent clear legislative direction.

. . . .

**36.** 908 S.W.2d 845 (Mo.App.1995).

**37.** *Id.* at 846.

**38.** Mo.Rev.Stat. § 454.505.1 (1994).

**39.** *Id.* § 454.505.8.

**40.** *Crenshaw,* 908 S.W.2d at 846.

**41.** *See id.*

**42.** 66 Ohio App.3d 628, 585 N.E.2d 918 (1991).

**43.** *See id.* at 919.

**44.** *Id.* at 920.

**45.** *Id.*

**46.** *See id.* at 919–21.

## IV. CONCLUSION

An employer or other person, political subdivision, or department of the state is liable to the state under AS 25.27.260(a) for failure to comply with a WID. Given the lack of a clear legislative intent that the statute should be construed to impose liability independent of the support obligation, the court finds Inn's liability for failure to comply with the WIDs regarding William Cullinane was joint and several with Cullinane's. Summary judgment as to CSRS's claim under AS 25.27.260 is GRANTED.

/s/ *Larry Weeks*
Larry Weeks
Superior Court Judge

BRYNER, Justice, with whom EASTAUGH, Justice, joins, concurring.

I agree with the court's decision to affirm the summary judgment but would rely on a narrower ground for affirming.

In the present case, counsel for CSRS substituted for the attorney general's office as plaintiff's counsel of record and, contemporaneously, substituted CSRS for CSED as the nominal plaintiff. In so doing, counsel for CSRS made it clear that CSRS was serving in the capacity of a private collection agency representing the obligee parent, Nancy Bowen. And counsel represented that "[t]he State of Alaska has always been merely a nominal party in this matter, prosecuting on behalf of the custodial parent and the dependant [sic] child. This substitution of parties is intended only to replace the nominal party."

The attorney general's office confirmed the narrow scope of the substitution, indicating that this case was one of "several collection cases" prosecuted by CSED with the attorney general's representation, that CSED had instructed the attorney general's office to cooperate with CSRS and CSRS's attorney "in turning collection of the child support arrearages in this case over to CSRS," and

that the attorney general's office agreed, "[t]oward that end," that substitution of counsel and of the nominal party was appropriate "in this instance."

By the explicit and unambiguous terms of this substitution agreement, the state authorized CSRS to replace CSED and to assert the agency's legal interests only to the extent that CSED had acted in Bowen's stead to collect her past due child support; the stipulation unequivocally contemplated that CSRS would only assert Bowen's right to collect "child support arrearages."

Assuming, then, that AS 25.27.260(a) goes beyond creating joint and several liability and literally holds noncompliant employers liable for a penalty equivalent to the amount of outstanding child support arrearages, CSRS simply had no authority to prosecute an action to enforce this penalty. Any penalty authorized by AS 25.27.260(a) under joint and several employer liability could not plausibly be characterized as "child support arrearages." Under AS 25.27.260(a), this penalty would be payable to the state, and would not be due or owed to Bowen. CSED's right to recover the penalty for the state thus differs markedly from its right to recover past due child support for Bowen. Accordingly, I would affirm on this narrow basis: no matter how broad AS 25.27.260(a)'s penalty might be, the penalty action belonged to the state, the state never assigned it to CSRS, and CSRS had no right to pursue it under the substitution agreement.[1]

Interpretation of AS 25.27.260(a) presents a close and difficult question that we need not answer here. In my view, we would best leave the question open for a case in which we must decide it.[2]

---

1. As the court correctly notes, CSRS has disclaimed reliance on AS 25.27.260(b)'s provision giving Bowen the right to maintain a direct penalty action. *See* Opinion at 64.

2. The court's decision to resolve this question when it could be readily avoided seems particularly unfortunate because the question is one of great significance to CSED, which is not a party here. Although CSED has filed an amicus brief forcefully arguing that the superior court's inter-

pretation of the statute is unduly narrow, and although the superior court did not have the benefit of this briefing when it ruled, this court today adopts by reference the superior court's decision without addressing CSED's arguments, thus precluding full consideration of the agency's position.