SECOND DIVISION

NOVEMBER 19, 2002

Nos. 1-99-3745, 1-00-3224, 1-01-1187 (cons.)

CHICAGO TRANSPARENT PRODUCTS, INC.
,  ) Appeal from the

  ) Circuit Court of

   Plaintiff-Appellee and Cross-Appellant,) Cook County
,

  ) Chancery Division.

v.      ) 

                      ) 

AMERICAN NATIONAL BANK AND TRUST
  
) 
90 CH 9069

COMPANY
 OF CHICAGO, as Trustee Under  ) 93 CH 8699

Trust Number 25628,  ) 

  )  

   Defendant-Appellant and Cross-Appellee,
) The Honorable

  ) 
Thomas A. Hett

  ) 
Bernetta D. Bush

(Sara Lee Corporation,
  ) Judges Presiding.

  )

    Defendant).
  )

  )

                 

JUSTICE CERDA delivered the opinion of the court:
 

In this appeal, defendant, American National Bank and Trust Company of Chicago, as trustee under trust number 25628, dated December 29, 1967 (the Land Trust), contends that the trial court erred in: (1) finding plaintiff, Chicago Transparent Products, Inc. (CTP), did not breach its sublease; (2) denying the Land Trust’s motion for substitution of judge or, in the alternative, in granting summary judgment in favor of CTP; and (3) denying the Land Trust’s motion to reconsider and modify the court-ordered escrow agreement.  In its cross-appeal, CTP contends that the court erroneously permitted the Land Trust to participate in the appraisal process after granting CTP’s motion for summary judgment.  We affirm in part and reverse and remand in part.

I. BACKGROUND

In 1972, Sara Lee Corporation (Sara Lee) entered into a lease for property located at 2700 North Paulina Street in Chicago.  The property was a manufacturing and warehouse complex consisting of a main building and three connected buildings.  The main building was owned by the Land Trust, while the connected buildings were owned by another trust and are not involved in these proceedings.

Sara Lee’s lease for the main building contained an alterations provision, which provided in part:

“(b) 
Alterations
.  Lessee shall not make or cause to be made any alterations, additions or improvements to the demised premises of a cost of $50,000 or more without the prior written consent of Lessor.”

The lease further required Sara Lee to keep the property in good repair and provided an expiration date of April 30, 1992, with an option to extend until April 20, 2002.

In a separate document, Sara Lee was given the option to purchase the property for its fair market value.  The option agreement required that the property be valued by each party selecting an appraiser, who would then select a third appraiser.

In 1978, Sara Lee subleased the main building to CTP.  The sublease was subject to all of the terms and conditions enumerated in the lease between Sara Lee and the Land Trust, including the alterations provision.  However, the sublease contained its own option to extend the original lease for an additional five years.  Sara Lee’s option to purchase was also assigned to CTP.

1990 Option to Purchase Litigation

In early 1990, CTP initiated the appraisal process as required by the option to purchase agreement.  The appraisers agreed to a fair market value of $775,000, and on April 3, 1990, CTP notified the Land Trust of its desire to exercise its option to purchase the property.

On September 17, 1990, prior to closing, CTP filed a complaint against the Land Trust alleging the existence of an environmental hazard on the property.  In response, the Land Trust demanded fulfillment of CTP’s contractual obligations under the option to purchase.  After CTP refused to close without performance of an environmental study, the Land Trust filed a counterclaim seeking a declaratory judgment that the option to purchase agreement was null and void due to CTP’s breach.  The 1990 option to purchase litigation remained unresolved.

Alterations Provision Litigation

On September 24, 1993, the Land Trust filed a complaint against CTP and Sara Lee, alleging they breached the alterations provision contained in the lease.  The complaint alleged that CTP made alterations to the main building totaling $77,293.19.  The Land Trust requested possession of the building, damages to restore the building, attorney’s fees, and costs.  On November 19, 1993, the 1990 option to purchase litigation was consolidated with the litigation over the alterations provision.

1997 Option to Purchase Litigation

On October 9, 1997, CTP informed the Land Trust that it again wished to initiate the appraisal process as defined by the option to purchase agreement.  On October 31, 1997, the Land Trust informed CTP that, due to pending litigation regarding CTP’s 1990 breach of the option agreement, it believed CTP no longer had a legal right to purchase the property.  CTP responded that the option to purchase was still valid and requested the Land Trust’s participation in the appraisal process.  The Land Trust did not obtain an appraisal of the property.

On March 17, 1998, CTP filed a second amended complaint, adding count VI.  Count VI requested a declaratory judgment that CTP had properly exercised its option to purchase in 1997, and was entitled to purchase the property at the value established by its appraiser.  In response, the Land Trust raised two affirmative defenses: (1) that CTP had breached the lease by violating the alterations provision; and (2) that CTP had breached the option to purchase provision by failing to close on the property after exercising the option in 1990.

The 1997 option to purchase action was consolidated with the alterations provision cause of action, and the parties filed cross-motions for summary judgment on the issue of alterations.  In denying the motions, trial court Judge Thomas Hett stated he could not make a decision without hearing evidence on the issue.  He further stated that bricking up the loading dock and putting in a new employee entrance sounded like alterations, but he was “worried about how much of the electrical was for replacing whatever was there because it was burned out and what was an addition to that [
sic
] service they had.”  The judge proceeded with a bench trial on the alterations issue on August 11, 1999.

At trial, invoices attached to a stipulation established that in late-1989, CTP hired Taylor Electric to install 2,000 amp electrical service and an 800 amp feeder to an existing electrical distribution panel.  Taylor Electric also cleaned and tightened the existing electrical switchgear.  The cost of labor and materials associated with this project totaled $47,742.  The invoice specifically itemized $1,350 for the cost of cleaning and tightening the existing switchgear.  

Also in late-1989, CTP hired Old Chicago Construction Company to brick up the loading dock in the main building, install a concrete walkway, install a gate, and repair damaged walls.  CTP paid Old Chicago $26,900 for its services.

Alan Edelstein, an electrical contractor, testified as an expert witness for the Land Trust.  Edelstein stated that he saw two electrical services on the property -- an older 1,600 amp service and a newer 2,000 amp service.  He further stated that the cleaning and tightening work, for which Taylor Electric charged $1,350, was probably necessitated by the electrical project.  Edelstein estimated that it would cost about $10,000 to restore the electrical system to its previous condition.

Marilyn Cooper, an agent of the Land Trust, testified that in 1988, Stanley Manne, the owner of CTP, contacted her and requested permission to install additional electric power for CTP’s equipment.  She did not grant permission.

Paul Rosenberg, an electrician/electrical contractor, testified as an expert for CTP.  He stated CTP needed additional electrical service to run its operations, and had to brick over the loading dock to install the new switchboard next to the old system.  Rosenberg stated that the cleaning and tightening work was routine maintenance and was not associated with the electrical project.  He further stated that only $3,340 of Old Chicago’s bill was for work related to the new electrical system.

Stanley Manne testified that in 1989, CTP acquired new business, which required the expansion of the electrical system. He stated that the work done by Old Chicago was done in all four buildings, not just the main building.  The repair of walls occurred in one of the connected buildings and Manne estimated the cost to be from $5,000 to $7,000.  Manne further testified that the Old Chicago bill included repair of the rear loading dock, which was not in the main building, and some general maintenance, such as securing loose floor tiles and repairing ceilings.  Manne said he never discussed the electrical work with Cooper because he considered it an addition of equipment, not a building modification.

On cross-examination, Manne testified that Old Chicago built a concrete sidewalk and a new employee entrance, put in fencing, removed the overhead loading dock door, bricked over the loading dock, and built a wall and a concrete pad inside the former loading dock area in the main building.

Judge Hett found that CTP did not breach the alterations provision.  He interpreted the provision as follows:

“* * * to require the landlord’s permission if any one addition or improvement projects [
sic
] exceeds the $50,000 limitation.  The same provision of the lease goes on to say, ‘lessee may make other alterations, additions, or improvements without the lessor’s consent provided lessee shall comply with the terms of this lease.’

This proviso makes no sense unless the total clause contemplates separate and individual projects that must meet the $50,000 barrier.  I do not read the clause as adding all the projects together and seeing if the total exceeds the $50,000 plateau.” 

Using this interpretation, the court found that CTP was conducting multiple projects around the same time.  The electrical project included the addition of the 2,000 amp electrical service, bricking over the loading dock, building the walls to form the electrical room, and laying concrete footing for the new electrical service.  The court found that the Land Trust had failed to prove the new employee entrance, sidewalk, fencing, rebuilding of an office, repair of damaged walls in another building, removal of trees, tile installation, and dock repairs in another building were part of the electrical project.

The court accepted Rosenberg’s estimate of $3,340 for Old Chicago’s work associated with the electrical project and stated it believed Rosenberg’s testimony that the tightening and cleaning of the existing switchgear was routine maintenance, which was not necessitated by the project.  Therefore, $3,340 added to Taylor Electric’s bill of $46,392 ($1,350 for the cleaning and tightening not included), equaled $49,732.  The court found that the addition of the new electrical service did not violate the lease provision requiring the landlord’s permission for an addition or improvement exceeding $50,000.  Judgment was entered for CTP and against the Land Trust, with the trial court declaring the order final and appealable.

On September 10, 1999, the Land Trust filed a posttrial motion contending that the trial court should not have separated the cost of the electrical project from the cost of the “entire job” undertaken by CTP in October 1989.  It argued that the trial court misled the parties into believing the only issue to be considered at trial was whether the electrical project was an “addition” to the property.  As a result, the Land Trust neglected to introduce evidence showing all of the work was one construction job, and it did not produce a $2,651.19 bill paid to Commonwealth Edison in connection with the electrical project.  The Land Trust requested that proofs be reopened to introduce further evidence relating to the court’s theory of the case.

The trial court denied the motion on October 18, 1999, stating: 

“I was here to determine the terms of the lease and under the evidence that you folks presented that I came up with a theory that you didn’t think about, Mr. Landis, is not something that I have to tell you ahead of time in explicit terms ***.

In trying a lawsuit where the issues are the terms of a particular document and evidence concerning that document and how it has or has not been breached, I don’t believe that it is my function to tell you how I’m going to decide the case ahead of time so that you can tailor your evidence to meet my understanding.

* * *

If you decided not to for whatever reasons, not to present that evidence, I don’t know that now in hindsight I should give you an additional opportunity to talk to me about the evidence that was not presented during of [
sic
] the course of the trial or for an opportunity to allow an offer of proof to put before the Appellate Court that which you did not present to me during the course of this trial.”

The Land Trust Appeals.

Disrepair of the Main Building

On August 11, 1998, CTP filed a counterclaim against Sara Lee, alleging the structural floor slab under the main building had sunk, causing damage to the floor and interior walls.

On February 22, 2000, CTP filed a motion for summary judgment on count VI of its second amended complaint, seeking an order by the court to compel the transfer of the property pursuant to the exercise of its option to purchase in 1997.

Following Judge Hett’s retirement, the case was assigned to Judge Bush in March 2000.  On March 13, 2000, Judge Bush set a briefing schedule and hearing date for CTP’s motion for summary judgment.  She also entered and continued CTP’s motion to stay discovery.  On March 20, 2000, Judge Bush entered an order granting the Land Trust’s motion for leave to file a counterclaim, entering and continuing the Land Trust’s motion to compel discovery, and granting CTP’s motion to stay discovery as to the Land Trust’s propounded interrogatories.

On March 22, 2000, the City of Chicago filed a complaint against a beneficiary of the Land Trust and Marilyn Cooper, claiming various building code violations.  The next day, the Land Trust filed a counterclaim against CTP and Sara Lee, alleging they had breached the lease by failing to keep the property in good repair.  The Land Trust later presented a motion for summary judgment on the counterclaim.  The court entered and continued the motion pending the outcome of CTP’s motion for summary judgment regarding the exercise of its option to purchase in 1997.

The trial court also revised the briefing schedule for CTP’s summary judgment motion, and reset the hearing date from May 3, 2000, to May 5, 2000.  On April 13, 2000, the Land Trust filed its brief in opposition to CTP’s motion for summary judgment.

The Land Trust’s Motion for Substitution of Judge

On April 17, 2000, the Land Trust filed a motion for substitution of judge as a matter of right under section 5/2-1001(a)(2) of the Illinois Code of Civil Procedure.  735 ILCS 5/2-1001(a)(2) (West 2000).  The motion alleged that the parties had appeared before Judge Bush three times and she had made only administrative, not substantial rulings.  CTP and Sara Lee argued that the motion was brought merely as a delay tactic to postpone the hearing on CTP’s motion for summary judgment.  The trial court denied the Land Trust’s motion.

On April 25, 2000, the Land Trust filed a petition in the Illinois Supreme Court requesting either a supervisory order or a writ of mandamus requiring the trial court to permit the substitution of judge as of right.  It also filed a motion to stay proceedings in the trial court pending the supreme court’s decision.  Judge Bush denied the motion to stay proceedings, stating that she believed the motion for substitution of judge had been filed as a delay tactic.  Subsequently, on May 10, 2000, the supreme court entered an order denying the petition.

On May 23, 2000, the Land Trust filed a motion to reconsider the trial court’s April 17 denial of the motion for substitution. The Land Trust argued that it was not attempting to delay the hearing on CTP’s motion for summary judgment as evidenced by its lengthy response to the motion, which had been filed on April 13.  The Land Trust told the trial court it was ready for the summary judgment hearing on the scheduled date, but wanted a different judge to preside over the hearing.  The trial court denied the motion for reconsideration.

Ruling on CTP’s Motion for Summary Judgment

and Enforcement Litigation

On June 8, 2000, the trial court granted CTP’s motion for summary judgment on count VI of its second amended complaint.  The court found CTP had properly exercised its option to purchase in 1997, and the Land Trust was obligated to sell the property to CTP.  The court ordered the Land Trust to obtain an appraisal of the main building’s value as of November 1997.

The parties subsequently filed cross-motions to enforce the court’s June 8, 2000, ruling.  On January 10, 2001, the court ordered CTP to take title to the property after Sara Lee and the Land Trust each deposited in escrow one-third of the cost needed to dismiss the City of Chicago lawsuit.

On March 2, 2001, the trial court entered an escrow order requiring the Land Trust to deposit trustees’ deeds conveying the main building to a land trust identified by CTP.  The Land Trust was also ordered to deposit with the title company the lesser of $10,000 or one-third of the cost of repairs from the City of Chicago lawsuit.  The order required CTP to deposit reconveyance deeds and $2,538,334 in a supplementary escrow account in the event the causes of action were reversed on appeal.

The Land Trust subsequently filed a motion for leave to file an appearance by additional counsel, for referral to mediation, and for modification of the escrow order.  The trial court granted the motion to file an additional appearance, but denied the motion in all other respects.  The Land Trust appeals from the denial of its motion for modification.

In sum, the parties appeal from three orders: 1) the finding that CTP did not breach the alterations provision (appeal no. 1-99-3745); 2) the denial of the Land Trust’s motion for substitution of judge, or, in the alternative, the granting of summary judgment on count VI of CTP’s second amended complaint (appeal no. 00-3224); and 3) the denial of the Land Trust’s motion to reconsider and modify the escrow order (appeal no. 01-1187).  We affirm in part and reverse and remand in part.

II. ANALYSIS

 The Land Trust first contends that CTP breached the lease by spending $77,293.19 on alterations to the main building.  It further contends the court erred when it separated the cost of the electrical project, misled the parties into believing that the trial would be focused solely on whether the electrical equipment was an alteration, and misconstrued the word “other” as used in the alterations provision.

Where a party challenges the trial court's ruling following a bench trial, the reviewing court will not reverse the findings of fact unless they are contrary to the manifest weight of the evidence.  
Nokomis Quarry Company v. Dietl
, 333 Ill. App. 3d 480, 775 N.E.2d 669, 673 (2002).  A fact finder’s determination is against the manifest weight of the evidence where, upon reviewing the evidence in the light most favorable to the prevailing party, the opposite conclusion is clearly apparent or the finding is palpably erroneous or arbitrary and unsubstantiated by the evidence.  
Joel R. v. Board of Education of Mannheim School District 83
, 292 Ill. App. 3d 607, 613, 686 N.E.2d 650 (1997).

“Under Illinois law, a lease is an agreement subject to the law of contracts.”  
Towne Realty, Inc. v. Shaffer
, 331 Ill. App. 3d 531, 536, 773 N.E.2d 47 (2002).  A lease must be construed as a whole to determine the parties’ intent, and the words used therein must be given their plain and ordinary meaning. 
 
Towne Realty, Inc.
, 331 Ill. App. 3d at 536.  Where the terms are unambiguous, they should be strictly enforced as written; h
owever, where the terms are ambiguous, the language must be construed in the lessee’s favor and against the lessor.  
Towne Realty, Inc.
, 331 Ill. App. 3d at 536. 

The alterations provision at issue provided in part:

“(b) 
Alterations
.  Lessee shall not make or cause to be made any alterations, additions or improvements to the demised premises of a cost of $50,000 or more without the prior written consent of Lessor. ***  Lessee may make other alterations, additions or improvements without Lessor’s consent, provided Lessee shall comply with all the other terms and conditions of this Lease.”

The language of the lease is clear in that any alterations or improvements must cost less than $50,000.  The trial court interpreted the provision to apply on a project by project basis, finding that any one alteration project may not exceed $50,000.  The court stated that the language “Lessee may make other alterations, additions or improvements without Lessor’s consent” made “no sense” unless it contemplated individual projects. 

We do not believe that an opposite conclusion is clearly apparent or that the court’s finding was unsubstantiated by the evidence.  The plain language of the lease allows this interpretation.  The lease does not specify whether the lessee cannot make any single alteration, which costs over $50,000 or whether all alterations over the life of the lease may not total more than $50,000.  However, the language “Lessee may make other alterations, additions or improvements without Lessor’s consent” does support the conclusion that the lease prohibits any single project from costing $50,000 or more.

Furthermore, it would not be reasonable to require the lessee to add together all addition, alteration or improvement projects over the life of the lease to determine whether the total exceeded $50,000.  See 
Scoville Court Condominium Association v. Orozon
, 171 Ill. App. 3d 932, 935, 525 N.E.2d 1109 (1988) (a lease should be interpreted fairly and reasonably in light of all its provisions and language).  The lease was for a term of 20 years and was extendable for another 5-year term.  

The Land Trust points to no language in the lease, which establishes that the trial court’s decision was palpably erroneous or arbitrary.  As a result, the trial court’s finding that, according to the lease, the electrical project should be treated as a single job and should not be added to all other alterations, additions and improvements made since 1972 was not against the manifest weight of the evidence.

The Land Trust argues in the alternative that the electrical project alone exceeded the $50,000 ceiling.  We disagree.

The trier of fact determines the credibility of the witnesses, the weight to be afforded their testimony, and the inferences to be drawn therefrom
.
  
See 
People v. Rodriguez
, 312 Ill. App. 3d 920, 932, 728 N.E.2d 695 (2000).  In a bench trial,
 the court is in the best position to observe the witness' demeanor and resolve conflicts in the testimony.  
People v. Sorenson
, 196 Ill. 2d 425, 431, 752 N.E.2d 1078 (2000).

CTP presented testimony establishing that a portion of the Old Chicago invoice reflected work done on the connected buildings.  Specifically, Stanley Manne testified that the loading dock repair and wall repair occurred in the connected buildings.  He estimated the cost of the wall repair alone to be $5,000 to $7,000.  Manne further testified that Old Chicago conducted some routine maintenance, such as securing loose tiles and repairing ceilings, which was included in the invoice.  The Land Trust provided no evidence to rebut this testimony.

Paul Rosenberg testified that approximately $3,340 of Old Chicago’s bill was for work related to the new electrical system in the main building.  Again, the Land Trust offered no evidence to refute this testimony.  Rosenberg also stated that the $1,350 Taylor Electric charge for cleaning and tightening the existing switchgear was routine maintenance and was not related to the electrical project.  Although the Land Trust’s expert witness contradicted this testimony, the trial court specifically stated that it believed Rosenberg.  

As a result, the court added the $3,340 Old Chicago charge to the $46,392 Taylor Electric bill (which did not include the cleaning charge) and determined that the work associated with the electrical project cost a total of $49,732.  Given the evidence presented at trial, it was not against the manifest weight of the evidence for the court to conclude that CTP spent under $50,000 on the electrical project.

Finally, the Land Trust argues that the court misled the parties into believing the only issue being considered at trial was whether the electrical work constituted an addition, alteration or improvement under the lease.  Instead, the court decided the case by determining the cost of the electrical project alone.  As a result, the Land Trust states it did not present certain evidence in support of its case, such as an invoice from Commonwealth Edison, and claims that the court erred in denying its motion to reopen proofs to present that evidence.

The denial of a motion to reopen proofs is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion.  
Dunahee v. Chenoa Welding & Fabrication, Inc.
, 273 Ill. App. 3d 201, 210, 652 N.E.2d 438 (1995); 
In re Marriage of Davis
, 215 Ill. App. 3d 763, 776, 576 N.E.2d 44 (1991).  If evidence offered for the first time in a posttrial motion could have been produced at an earlier time, the court may deny its introduction into evidence.  
Davis
, 215 Ill. App. 3d at 776.

The trial court denied the parties’ cross-motions for summary judgment, stating it needed more evidence to make a decision.  The court’s statements were not misleading, nor was it obligated to divulge which theory of the case it would ultimately employ in its decision.  It is the parties’ responsibility to present evidence at trial in support of their theories of the case.  The fact finder then makes its determination based on the evidence presented.  This is what the trial court did here.

Furthermore, because the Land Trust does not allege that the Commonwealth Edison bill could not have been produced at trial, the trial court did not abuse its discretion in denying the motion to reopen proofs.

The Land Trust next contends that the trial court erred in denying its motion for substitution of judge, thereby voiding all subsequent orders entered in this case.  We agree.

Pursuant to section 5/2-1001(a)(2) of the Illinois Code of Civil Procedure, a party is entitled to one substitution of judge as of right, without cause.  735 ILCS 5/2-1001(a)(2) (West 2000).  A motion for substitution under this section must be presented before the trial or hearing begins and before the judge considering the motion has ruled on any substantial issue in the case.  735 ILCS 5/2-1001(a)(2)(ii) (West 2000).  The right to a substitution of judge under this section is absolute where the motion is timely filed in accordance with these requirements.  
Alcantar v. Peoples Gas Light and Coke Co.
, 288 Ill. App. 3d 644, 648, 681 N.E.2d 993 (1997).

In this case, the Land Trust filed its motion for substitution of judge 18 days before the hearing on CTP’s motion for summary judgment.  This court has found that it is not improper for a party to file such a motion even one week before a trial when the trial date has been pending for four months.  
Sahoury v. Moses
, 308 Ill. App. 3d 413, 414, 719 N.E.2d 1157 (1999).

In addition, the court had not ruled on any substantial issue in the case.  “Rulings directly related to the merits of the case are considered substantial.”  
In re Marriage of Petersen
, 319 Ill. App. 3d 325, 338, 744 N.E.2d 877 (2001).

At the time the Land Trust filed its motion for substitution of judge, the trial judge had held three motion hearings and ruled on a number of motions.  She granted the Land Trust leave to file a counterclaim, entered and continued the Land Trust’s motion for summary judgment, stayed discovery on the issue of building repairs, and set hearing dates and briefing schedules for CTP’s motion for summary judgment. 

Contrary to CTP’s argument, we do not find that staying discovery on a related issue amounted to a substantial ruling.  See 
Petersen
, 319 Ill. App. 3d at 338 (ruling on a discovery issue was substantial because it affected the admissibility of evidence.)  In fact, none of the orders here were substantial rulings that went to the merits of the case.  
Stoller v. Paul Revere Life Insurance Co.
, 163 Ill. App. 3d 438, 442, 517 N.E.2d 5 (1987) (orders regarding compliance with discovery requests, the release of medical records, and the setting of dates for interrogatories and trial are not substantive rulings); 
In re Marriage of Roach
, 245 Ill. App. 3d 742, 746, 615 N.E.2d 30 (1993) (pretrial conferences, where no decisions are made affecting the merits of the case, and rulings on unopposed motions for leave to amend, discovery motions, and motions for severance are not rulings on substantial issues).  The rulings did not concern the admissibility of evidence (see 
Petersen
, 319 Ill. App. 3d at 339; 
Bonnie Owen Realty, Inc. v. Cincinnati Insurance Co.
, 283 Ill. App. 3d 812, 821, 670 N.E.2d 1182 (1996)), nor had the judge expressed her opinion regarding the merits of the motion for summary judgment (contra 
Alcantar
, 288 Ill. App. 3d at 648).

CTP argues that the trial court properly denied the motion because it was brought solely to delay the summary judgment hearing.  A court may deny a motion for substitution of judge where the motion was made solely to delay or avoid trial.  
People v. Williams
, 124 Ill. 2d 300, 309, 529 N.E.2d 558 (1988); 
Beahringer v. Hardee’s Food Systems, Inc.
, 282 Ill. App. 3d 600, 601, 668 N.E.2d 614 (1996); see also 
Sahoury
, 308 Ill. App. 3d at 414
.  Based on the holdings in 
Beahringer
 and 
Sahoury
, the motion in this case could not have been brought solely to delay or avoid trial, as a trial date had not yet been set.

The fact that there was a pending motion for summary judgment is not reason enough to deny a substitution of judge motion.  In 
Delta Oil Company, Inc. v. Arnold
, 66 Ill. App. 3d 375, 384 N.E.2d 25 (1978), the defendant filed a motion for change of venue while motions for summary judgment were pending.  The trial court heard arguments on the motion six weeks before the scheduled summary judgment hearing, and denied the motion thirteen days before the hearing.  This court reversed the denial, finding that the motion was timely and should have been granted as of right.  
Delta Oil Company
, 66 Ill. App. 3d at 381.  In the case 
sub judice
, the substitution motion was filed and heard 18 days before the summary judgment hearing.  As in 
Delta Oil
, the fact that the summary judgment hearing was pending when the motion was filed does not render the motion untimely.

Despite the lack of a pending trial date, we will also address CTP’s claim that the Land Trust meant to delay the summary judgment hearing.  Where an attempt to delay is made clear by motions for continuances or other conduct, the trial court may inquire into the good faith of the movant.  See 
Hoffmann v. Hoffmann
, 40 Ill. 2d 344, 348, 239 N.E.2d 792 (1968); 
People v. Mosley
, 24 Ill. 2d 565, 569, 182 N.E.2d 658 (1962).  If, after the inquiry, it is apparent that the motion was made only to delay or avoid trial, the trial court may deny the motion.  
Hoffmann
, 40 Ill. 2d at 348; 
Mosley
, 24 Ill. 2d at 569.  

When a motion for substitution of judge is properly denied, the attempts at delay are very clear.  In 
Hoffmann
, the court granted the movant’s request for a continuance, denoting it a “final continuance.”  
Hoffmann
, 40 Ill. 2d at 348.  The movant subsequently requested another continuance, which was denied.  After the case was assigned to a trial judge, the movant renewed her request, and it was again denied.  She then filed a motion for change of venue.  During the court’s inquiry into the motion, counsel stated, “We are not ready, we have asked for a continuance and we do not feel we can get a fair and impartial trial.”  
Hoffmann
, 40 Ill. 2d at 346.  The movant further testified that she was not prepared to go to trial.  The sequence of motions combined with the testimony of the movant and her counsel left no doubt that the motion for change of venue was filed solely for the purpose of delay.  
Hoffmann
, 40 Ill. 2d at 348; see also 
People v. Stewart
, 20 Ill. 2d 387, 391-92, 169 N.E.2d 796 (1960) (motion for change of venue was properly denied where trial was reset once by the court, continued twice on defendant’s motion, and defendant filed his motion for change of venue one day before trial was to begin).  Where there is no clear indication of an attempt to delay trial, however, a motion for substitution should not be denied.  See 
Mosley
, 24 Ill. 2d at 569 (motion for change of venue erroneously denied where no continuances were requested prior to the filing of the motion).

In this case, the Land Trust did not request any continuances prior to filing its motion, and it had already 
submitted a detailed response to CTP’s motion for summary judgment.  Although the trial court did not make an official inquiry into the motion, the Land Trust told the court it was prepared to proceed with the hearing on the scheduled date.  There was no indication that it was attempting to delay the hearing.  Given these facts and the absolute nature of this right, we find the motion for substitution of judge was improperly denied. 

Because the Land Trust’s motion for substitution of judge was erroneously denied, all orders entered subsequent to the denial are null and void.  See 
In re Dominique F.
, 145 Ill. 2d 311, 324, 583 N.E.2d 555 (1991)
.  As a result, we need not address appellant’s arguments regarding the granting of summary judgment on count VI of CTP’s second amended complaint and the escrow order entered by Judge Bush.

Accordingly, the circuit court’s finding that CTP did not breach the alterations provision is affirmed; the denial of the Land Trust’s motion for substitution of judge is reversed and all orders entered subsequent thereto are vacated.  The cause is remanded to the Chief Judge for reassignment to another trial judge.

Affirmed in part; reversed and remanded in part; vacated in part.

McBRIDE, P.J., and CAHILL, J., concur.