# Illinois Official Reports

## Appellate Court

*In re Estate of Bennoon*, 2014 IL App (1st) 122224

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF CARMEL BENNOON, Decedent (Tatyana Tovstorog, Petitioner-Appellant, v. Nicholas G. Grapsas, Public Administrator of Cook County, Respondent-Appellee). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2224 |
| Filed | June 20, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's denial of petitioner's motion to amend the order of heirship of the deceased to include petitioner as the deceased's great-niece was not against the manifest weight of the evidence, since the witness presented by respondent, the public administrator, was a genealogist and attorney from the Ukraine, the trial court did not abuse its discretion in finding her qualified to testify as an expert in genealogy and she testified that the records supporting petitioner's claim were falsified, the trial court did not err in denying comity to Ukrainian records of petitioner's claim that she was the great-granddaughter of decedent's father and a paternal heir, and the denial of petitioner's motion to reopen the proofs for reconsideration was not an abuse of discretion. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2008-P-0011038; the Hon. John C. Fleming, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal      Thomas G. Gardiner and Michelle M. LaGrotta, both of Gardiner Koch Weisberg & Wrona, and Robert J. Ralis, both of Chicago, for appellant.

Arnstein & Lehr LLP, of Chicago (Hal R. Morris, Michael A. Aramson, Colleen A. Chinlund, and Katelyn R. Letizia, of counsel), for appellee.

Panel      JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Tatyana Tovstorog filed a motion to amend heirship in the estate of Carmel Bennoon. Following a hearing, the circuit court of Cook County entered an order denying the motion to amend heirship. The petitioner appeals, contending that: (1) the trial court erred when it found respondent Nicholas G. Grapsas', the public administrator of Cook County, expert witness qualified to render an opinion on genealogy; (2) the court erred when it denied comity to an order from the Ukrainian court; (3) the court erred when it denied the petitioner's motion to reopen proofs; (4) the denial of the motion to amend heirship was against the manifest weight of the evidence; and (5) the court erred when it denied the petitioner's motion for rehearing or, in the alternative, reconsideration of the order denying the motion to amend heirship.

¶ 2    Having reviewed the record and considered the authorities relied on by the parties, we conclude that the trial court's rulings were not erroneous, and the decision to deny the motion to amend heirship was not against the manifest weight of the evidence. The facts pertinent to the issues on appeal are set forth below.

¶ 3    The decedent died on December 14, 2007, leaving no known heirs. The order of heirship was amended to include the maternal heirs, but the paternal heirs remained unknown. On March 11, 2008, Michael Ian Bender, the public administrator of Cook County, was appointed as supervised administrator of the estate. Subsequently, Nicholas G. Grapsas replaced Mr. Bender as the public administrator.

¶ 4    On January 27, 2011, the petitioner filed a motion to amend that section of the order of heirship which identified the paternal heirs as unknown and to add herself as the great-niece of the decedent. The motion was supported by the affidavit of her attorney. The attorney averred that a genealogical search was conducted by a law firm in Belarus. The documentation produced during the search established that the petitioner and the decedent shared a common paternal ancestor. The documents included: the marriage registration of Mendel Purkovich, the decedent's father, to Sara Kogan; the birth certificate of Miryam Purkovich, Sara and Mendel's daughter; the marriage registration of Vasil Shpota to Miryam Purkovich; and the birth certificate of Liliya Shpota, Vasil and Miryam's daughter and the

mother of the petitioner. These documents had been authenticated with an apostille.[1] In addition, there was an October 4, 2011, order from the Ukrainian court establishing the petitioner's lineage as a matter of law.

¶ 5    At the February 2, 2012, hearing on the motion, the respondent objected to the admission of the petitioner's documentation into evidence. The trial court allowed the petitioner's documents to be used at the hearing but preserved the respondent's objection to their authenticity.

¶ 6    Julia Semenova, a genealogist and an attorney, testified for the respondent as follows. Ms. Semenova resided in Kiev, in the Ukraine. She was employed by the Ukrainian Bar Association for Foreign Affairs (Bar Association). The Bar Association had been dealing with genealogical research for 40 years and conducted genealogical researches on behalf of Ukrainian next-of-kin to prove kinship in interstate cases in the courts of the United States and other jurisdictions.

¶ 7    Ms. Semenova had worked for the Bar Association for 4½ years and was currently the head of the genealogical research and international probate process section. Her work included research and investigations to identify the next of kin located in the Ukraine. She inspected various vital records such as birth, death, marriage, census and governmental records. Ms. Semenova also prepared submissions, affidavits and due-diligence reports based on her findings to establish facts concerning a family history or entitlement of a client in an estate case. She had master's degrees in English and law.

¶ 8    Ms. Semenova had testified as an expert in genealogy in probate cases in New York City and, as an expert in genealogy, submitted due-diligence reports and affidavit certifications to establish kinship in probate proceedings in Connecticut, New Jersey, California and New York. When asked about her training or education in genealogy, Ms. Semenova explained that she had practical experience and that she attended seminars and conferences devoted to genealogical research. There was no degree or license for genealogy in the Ukraine. Ms. Semenova regularly participated in conferences where genealogists discuss methods of tracing information and availability of different records and how they can be traced. She had been attending these conferences once a year for 10 years. At the end of these conferences, she received a certificate describing the training and the skills and knowledge the participant obtained. Over the objection of the petitioner, the trial court accepted Ms. Semenova as an expert witness in the field of genealogy.

¶ 9    Ms. Semenova was assigned to review certain documents at the request of the respondent to determine their validity. After examining the documents, she sent a request to the National Archives of Ukraine, to confirm the validity of the documents. She also advised that there might be some violations with respect to the issuances of certain of the documents. She received a reply from the National Archives that the documents she had sent had been falsified and that she would be provided with certificates stating that information. She obtained an apostille of the documents and returned them to the respondent for review.

¶ 10   At the request of the respondent, in November 2011, Ms. Semenova undertook her own investigation in Orkut City located in Transcarpathia, where the archives office and copies of

_____

[1] "A marginal note or observation; esp., a standard certification provided under the Hague Convention for authenticating documents used in foreign countries." Black's Law Dictionary 105 (8th ed. 2004).

records were kept. She was familiar with the Ukraine's record-keeping procedures from 1900 to 1935. Starting from 1895, the government established registrar's offices for registering births, deaths and marriages. Two sets of records were maintained: the registrar's book of birth, marriage and death, which contained detailed information about the event, and the alphabetical name index book, which contained only the name of the subject of the record and the year the record was composed. Each book printed and numbered by a special printing house, and all of the pages were marked with the state symbol. The books were hard-bound and sealed. If a change was made to the books, an official stamp was placed on the books, and the official archives would contain information about the reconstruction of the books.

¶ 11     Ms. Semenova's investigation was concerned with the following documents: a 1903 certificate of marriage between Sara Kogan and Mendel Purkovich, a 1903 birth certificate of Miryam Purkovich, Sara and Mendel's daughter; the certificate of marriage between Miryam Purkovich and Vasil Shpota; and the birth certificate of Liliya Shpota, the petitioner's mother. Each document had a source code number which would lead a researcher to the actual record. In the case of the marriage certificate, the source code led to a register of births and deaths but not marriages. When she checked the marriage registry book for 1903, she located the record of marriage between Sara and Mendel.

¶ 12     Ms. Semenova observed that the page on which the record was located had been attached with office glue, which was not used by the archives. The rest of the pages were attached with a thread, not with glue, and the page was attached after the registry book was already bound. There was also a white stain on the page indicating that a number had been erased so that the numbering of the pages would be consistent. The inserted page was also torn and the ink used on the page was smudged in places. An officer from the archives office explained to her that the ink from the old period did not erode when it came into contact with a wet surface or liquid. The color of the ink on the marriage record did not match the color of the ink used on any of the other pages in the registry book. The signature of the civil registrar who recorded the information on the marriage certificate differed from the other signatures in the book, indicating that the record of the marriage was not made in 1903.

¶ 13     Based on her observations, Ms. Semenova concluded that the original record had been pulled out, leaving just the official seal, and that the record of the 1903 marriage between Sara and Mendel had been inserted in its place. Ms. Semenova found similar discrepancies with regard to the 1903 birth certificate of Miryam Purkovich. She also checked the alphabetical index and found no record of Miryam's birth. When Ms. Semenova used the source code to trace the certificate of marriage between Miryam and Vasil, the code did not lead her to the marriage registry book. When she tried to trace the birth record of Liliya Shpota, the code took her to the death registry book. Ms. Semenova opined that the information upon which the certificates of marriage and birth relied on by the petitioner to prove heirship was false and untrue.

¶ 14     On cross-examination by the petitioner, Ms. Semenova acknowledged that in 1903, Zakarpattie, where these archival records were located, was part of the Austro-Hungarian Empire. Records were kept by that government, and the official seal was not in use at the time. The use of the seal began in 1945, when the region became part of the Soviet Union. She further acknowledged that if a change was made prior to 1945, there was no official way of knowing that a record had been changed.

¶ 15    Ms. Semenova maintained that making a correction by whiting it out was unusual and that no other pages had such corrections. There was one registrar from 1903 to 1905, but two different signatures, one appearing on the disputed documents and the other on all the other records. Ms. Semenova acknowledged that she did not know what kind of ink was used in 1903, but she did not observe any ink smudges on any other pages in the registry book.

¶ 16    Olga Schwitz testified in the Russian language through an interpreter as follows. Ms. Schwitz, a resident of Kiev, Ukraine, was a lawyer working for the National Archives Service of the Ukraine and served as the deputy head of legal services. Her duties included developing the legal act supporting the work of the archives and representing the interests of the National Archives Service in courts and during trials. Ms. Schwitz had worked for the National Archives Service for two years. She received a master's degree in law in 2005.

¶ 17    Ms. Schwitz was a member of a committee appointed by the National Archives Service to investigate the heirship claims in this estate. The committee was asked to check all the information provided by the state archives of the Transcarpathia region. In March 2011, the committee met with the director of the archives for that region and reviewed certain records: the marriage record of Sara Kogan and Mendel Purkovich, the birth certificate of Miryam Purkovich, the marriage record of Miryam Purkovich and Vasil Shpota and the birth record of Liliya Shpota.

¶ 18    The review of these documents revealed that the documents were done with different handwriting and different ink than on any other pages in the registry book. The sheets in the registry book were bound, but these documents were glued into the registry book. The numbering of the pages did not correspond to the proper sequence. While the registry books were kept in chronological order, these documents were not in chronological order. The committee concluded that the information in the registry books was falsified and untrue.

¶ 19    As a result of their investigation, the committee conducted an internal investigation of the custodians of the records. Their report included the finding that the information contained in the certificates was false, was sent to the Transcarpathian State Administration to be referred to prosecutors in Transcarpathia for further investigation.

¶ 20    According to Ms. Schwitz, the documents were further investigated by an expert committee of the State Archives of the Transcarpathia region. The expert committee found that the records had been falsified and directed that they be purged from the national archives. Ms. Schwitz identified the respondent's exhibit No. 14 as the evaluation prepared for this case by Ms. Schwitz's committee. In the committee's opinion, the records were unreliable and had been purged from the national archives and from the registry book. It was the committee's opinion that the information contained in the petitioner's document was false.

¶ 21    The petitioner did not cross-examine Ms. Schwitz and did not call any witnesses. She relied on the "apostilled" certificates of marriage and birth and other documents she had obtained from the Ukraine. The trial court stated that it would review all of the parties' documents prior to issuing its opinion.

¶ 22    On March 6, 2012, the petitioner filed a motion to reopen proofs. The petitioner alleged that the respondent failed to notify her that he was presenting the testimony of Ms. Semenova and Ms. Schwitz, and as a result, the petitioner was unable to present witnesses to rebut their testimony. The petitioner alleged that the respondent failed to disclose the March 29, 2011, letter from the State Archives of the Transcarpathia region, stating that the petitioner's

documents were fraudulent. The petitioner further alleged that she had obtained documentation from the National Academy of Sciences of the Ukraine setting forth the limits of the authoritative value of Ms. Semenova's and Ms. Schwitz's testimony, the requirement that the falsity of the documents be confirmed through the criminal process, that there was no right to remove the documents from the archive and that the petitioner's certificates should be deemed legally valid.

¶ 23    On March 8, 2012, the trial court issued an order denying the petitioner's motion to reopen the proofs, finding that the motion was dilatory and untimely. In denying the motion to amend heirship, the court stated in pertinent part as follows:

> "The Petitioner has the burden of proving she is descended from decedent's father. The Petitioner introduced an affidavit of heirship and certified documents to prove her claim. The clear and convincing testimony of Ms. Semenova and Olga [Schwitz] demonstrate the falsity of the documents. Further, Respondent also introduced its own Exhibit 14. Exhibit 14 contains the official expert opinion of the State Archive Service of Ukraine concerning the Petitioner's documentation. The State Archive Service is the official record keeper and its findings that the records the Petitioner relies upon are false are compelling evidence. *** It is clear that the documents that Petitioner relies upon, while bearing an Apostille, are not accurate. The official finding of the State Archives Service that the information that Petitioner's documents are based upon is false, renders the Petitioner's documents worthless. They are certified copies of false information and therefore have no legal significance."

¶ 24    On April 6, 2012, the petitioner filed a motion for rehearing or, in the alternative, reconsideration of the order denying her motion to amend heirship on the grounds of newly discovered evidence. The "newly discovered evidence" was the same evidence the petitioner relied on in her motion to reopen proofs: the letter from the National Academy of Sciences of the Ukraine setting forth the limits of the authoritative value of Ms. Semenova's and Ms. Schwitz's testimony, the requirement that the falsity of the documents be confirmed through the criminal process, that there was no right to remove the documents from the archives and that the petitioner's certificates should be deemed legally valid.

¶ 25    On June 28, 2012, the trial court denied the motion for rehearing or reconsideration. The petitioner now brings this appeal.

¶ 26                                    ANALYSIS
¶ 27                                I. Expert Witness
¶ 28    The petitioner contends that the trial court erred when it found Ms. Semenova to be an expert witness in the field of genealogy.

¶ 29                            A. Standard of Review
¶ 30    Whether to admit expert testimony is within the sound discretion of the trial court. *Thompson v. Gordon*, 221 Ill. 2d 414, 428 (2006). "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.

The petitioner argues that Ms. Semenova did not qualify as an expert witness on genealogy. She points to her lack of education and degrees in the area of genealogy, the lack of evidence as to how long she had worked in the field of genealogy or information about the cases she had worked on to gain practical experience, and her lack of knowledge about the field demonstrated during cross-examination.

"A person will be allowed to testify as an expert if his experience and qualifications afford him knowledge that is not common to laypersons, and where his testimony will aid the trier of fact in reaching its conclusions." *Thompson*, 221 Ill. 2d at 428. The witness is not required to have formal academic training or specific degrees to qualify as an expert; the witness's practical experience in a field may serve to qualify him as an expert. *Thompson*, 221 Ill. 2d at 429.

Ms. Semenova's testimony established her qualifications as an expert witness. She explained that there was no degree or license for genealogy in the Ukraine, where she resided. Ms. Semenova's practical experience consisted of her practical experience in performing genealogy research and attending conferences devoted to genealogy and the exchange of information concerning new methods to aid in research. She had attended these conferences for at least 10 years and had worked for the Bar Association doing genealogy research for the previous 4 years. Ms. Semenova had testified as an expert witness in genealogy in several courts in the United States. The petitioner cites no authority requiring a specific number of years or number of cases an expert must work on in order to be accepted as an expert witness.

The petitioner also argues that Ms. Semenova's testimony on cross-examination showed she lacked the knowledge of an expert witness in her field. We disagree.

With regard to the torn page that was pasted into the marriage book, Ms. Semenova testified that she was unfamiliar with record-keeping practices in 1903. However, she was of the opinion that it was not the best practice to make a change in a record. In addition, she testified that no other pages had been pasted into the marriage registry book. Ms. Semenova also acknowledged that she was unfamiliar with the type of ink used in 1903. Her testimony that different ink was used was based on information from an archival officer. Moreover, the petitioner fails to provide authority that, as a genealogist, Ms. Semenova must have been trained in the chemical properties of ink.

We conclude that the trial court did not abuse its discretion in finding Ms. Semenova qualified to testify as an expert in the field of genealogy.

## II. Comity

The petitioner contends that the trial court erred when it denied comity to the October 4, 2011, Ukrainian court order establishing that she was the great-granddaughter of Mendel Purkovich.

## A. Standard of Review

We review the decision of the trial court to grant or deny comity for an abuse of discretion. *Performance Network Solutions, Inc. v. Cyberklix US, Inc.*, 2012 IL App (1st) 110137, ¶ 34.

¶ 42                                                    B. Discussion

¶ 43        The doctrine of comity is defined as a " ' "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws." ' " *Performance Network Solutions, Inc.*, 2012 IL App (1st) 110137, ¶ 34 (quoting *In re Marriage of Kohl*, 334 Ill. App. 3d 867, 880-81 (2002), quoting *Clubb v. Clubb*, 402 Ill. 390, 399-400 (1949)). "Comity is not a rule of law, but one of practice, convenience, and expediency." *Philips Electronics, N.V. v. New Hampshire Insurance Co.*, 295 Ill. App. 3d 895, 904 (1998).

¶ 44        The petitioner argues that the trial court should have granted comity to the rulings of the Ukrainian court in which that court made findings of fact with respect to the petitioner's claim that she was the great-granddaughter of Mendel Purkovich, the decedent's father, and therefore a paternal heir. The petitioner points out that an Illinois court will grant comity to an act of a foreign court as long as the foreign court is one of competent jurisdiction and does not violate the laws and the public policy of Illinois. See *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 669 (1997).

¶ 45        In *Amica Life Insurance Co. v. Barbor*, 488 F. Supp. 2d 750, 756-57 (N.D. Ill. 2007) , the court observed that in *Hilton v. Guyot*, 159 U.S. 113 (1895), the United States Supreme Court set forth the bounds for granting comity to a foreign court's ruling, and that the lower federal courts read *Hilton* to require specific criteria for a finding of comity, including "(1) [an] opportunity for a full and fair trial; (2) [a] trial before a court of competent jurisdiction; (3) proceedings following due citation or voluntary appearance of adversary parties; (4) a trial conducted upon regular proceedings; (5) a trial under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries; and (6) no evidence to demonstrate fraud in the procuring of the judgment, prejudice in the system of laws in which the court was sitting, or prejudice in the court." *Amica Life Insurance*, 488 F. Supp. 2d at 756-57 (citing *Van Den Biggelaar v. Wagner*, 978 F. Supp. 848, 858-59 (N.D. Ind. 1997), and *Glaverbel Societe Anonyme v. Northlake Marketing & Supply Inc.*, 48 U.S.P.Q.2d (BNA) 1344, 1346-47 (N.D. Ind. 1998)). The concept behind comity is that " 'once the parties have [h]ad an opportunity to present their cases fully and fairly before a court of competent jurisdiction, the results of the litigation process should be final.' " *Amica Life Insurance*, 488 F. Supp. 2d at 757 (quoting *International Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV*, 347 F.3d 589, 593 (5th Cir. 2003)).

¶ 46        Notice, an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case are the essential elements of due process of law. *Lescher v. Barker*, 57 Ill. App. 3d 776, 783 (1978). In *Kohl*, this court upheld a trial court order denying comity to a foreign child support order where the foreign court lacked personal jurisdiction over the respondent-father. *Kohl*, 334 Ill. App. 3d at 881; see also 23A Ill. L. and Prac. *Judgments* § 294 (2008) (foreign judgments will be honored, *inter alia*, if the participants were given an opportunity for a full and fair trial).

¶ 47        In *Amica Life Insurance*, a hearing was held in the Syrian court to correct a birth date in order to establish insurance coverage. Since it was unclear whether the Syrian court

proceedings were adversarial and the insurance company had no opportunity to present conflicting evidence, the district court held:

> "[W]e will not bind a non-party to the foreign proceeding to a fact determined on the basis of evidence presented only by the adversary (or those with the same interests as the adversary) in the domestic proceeding." *Amica Life Insurance*, 488 F. Supp. 2d at 757.

¶ 48 In the present case, it appears that the court proceeding in the Ukraine court was conducted *ex parte*. There is no evidence that the respondent was given notice of the proceeding in order to participate or that the proceeding was adversarial.

¶ 49 We conclude that the trial court did not abuse its discretion when it denied comity to the orders of the Ukrainian court.

### III. Reopening the Proofs

¶ 51 The petitioner contends that the trial court erred when it denied her motion to reopen the proofs.

### A. Standard of Review

¶ 53 We review an order denying a motion to reopen proofs for a clear abuse of discretion. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1077 (2007).

### B. Discussion

¶ 55 In ruling on a motion to reopen proofs, the trial court considers: " 'whether the moving party has provided a reasonable excuse for failing to submit the additional evidence during trial, whether granting the motion would result in surprise or unfair prejudice to the opposing party, and if the evidence is of the utmost importance to the movant's case.' " *General Motors Acceptance Corp.*, 374 Ill. App. 3d at 1077 (quoting *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 389 (2004)). Where the case is tried before the court without a jury, greater liberty should be allowed in reopening proofs. *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 210 (1995).

¶ 56 In the present case, there was no jury and the petitioner's motion to reopen proofs was brought before the trial court rendered its decision in this case. See *Dunahee*, 273 Ill. App. 3d at 211 (trial court's denial of the motion to reopen the proofs was an abuse of discretion, in part, because the judgment had not yet been rendered, and the witness was still available to testify). Nonetheless, under the facts of this case, the denial of the motion to reopen proofs was not an abuse of discretion.

¶ 57 The petitioner maintains that she had a reasonable excuse for not introducing the evidence during the hearing. She points out that the respondent did not file a response to her petition and failed to disclose Ms. Semenova and Ms. Schwitz as witnesses as well as the documents he presented at the hearing. The petitioner was therefore unprepared with rebuttal evidence at the time of the hearing. However, since the hearing, her attorney "has had the opportunity to investigate and obtain rebuttal evidence."

¶ 58 The petitioner's argument is belied by the record. Prior to the hearing, the assistant State's Attorney (ASA) explained that for a year, his office had been in discussions with the

attorney for the petitioner regarding the petitioner's documents in order to enter into a stipulation as to heirship. However, no agreement had been reached. The ASA informed the trial court that the maternal heirs objected to the motion to amend heirship on the grounds that some of the evidence relied on by the petitioner "does not rise to the standard that it needs to meet." The respondent explained to the court that what was contested was the petitioner's proof that Mendel Purkovich had been married twice and that one of the marriages was to Sara Kogan. While the petitioner's attorney claimed he was unaware that the motion was contested, under questioning by the trial court, the petitioner's attorney acknowledged that he had not filed any discovery motions and was aware that the hearing had been set for February 2, 2012. The petitioner then chose to proceed on the basis of the documentation she was presenting to the court.

¶ 59    Even in the absence of a response by the respondent, it is clear from the record that the petitioner was aware for at least a year prior to the hearing that the validity of her documents to prove heirship was at issue. The petitioner chose not to file any discovery motions and, therefore, has no valid claim that she was surprised by the witnesses and the evidence the respondent presented at the hearing.

¶ 60    In *Chicago Transparent Products, Inc. v. American National Bank & Trust Co. of Chicago*, 337 Ill. App. 3d 931 (2002), the reviewing court held that the denial of a motion to reopen proofs was not an abuse of discretion in the absence of an allegation that the evidence could not have been produced at trial. *Chicago Transparent Products, Inc.*, 337 Ill. App. 3d at 942. The petitioner argues that the case is distinguishable because she alleged that she did not obtain the evidence until after trial. However, the reply from the National Academy of Sciences of the Ukraine indicates that the information was not of recent origin and could have been obtained prior to the hearing.

¶ 61    In the present case, the petitioner was made aware from the discussions with the ASA that there were unresolved objections to the documentation she was relying on to prove heirship. While petitioner claimed that the respondent's failure to respond to her petition caused her to be unprepared to rebut the respondent's witnesses and documents, the petitioner failed to conduct any prehearing discovery to ascertain any grounds for objection to her petition and any witnesses the respondent intended to call. Unlike the plaintiff in *Dunahee*, the petitioner's failure to introduce the new evidence was not because of inadvertence but was a calculated risk on her part. *Dunahee*, 273 Ill. App. 3d at 210.

¶ 62    The petitioner maintained that the evidence she wished to present was of material significance to her case. The petitioner relies on *People v. Cotell*, 298 Ill. 207 (1921). In that case, the newly discovered evidence established that the State's main witness, the defendant's accomplice, had testified falsely. Rather than mere impeachment, the supreme court determined that the newly discovered evidence went to the "very foundation of the people's case and should be considered by a jury." *Cotell*, 298 Ill. at 217.

¶ 63    In *People v. Holtzman*, 1 Ill. 2d 562 (1953), the court distinguished *Cotell*. The court in *Holtzman* noted a distinction between "evidence which impeaches a witness in the sense that it affects the credibility of the witness, and evidence which is probative in that it presents a state of facts which differs from that to which the witness testified." *Holtzman*, 1 Ill. 2d at 568. Where the effect of the newly discovered evidence is to "discredit, contradict and impeach a witness," the evidence does not afford a basis for granting a new trial. *Holtzman*, 1 Ill. 2d at 568.

¶ 64 The petitioner's new evidence did not consist of facts disputing that Ms. Semenova carried out an investigation or her physical examination of the genealogy records. The new evidence went to "discredit, contradict and impeach" her conclusions that the petitioner's documents were based on false information. Unlike *Cotell*, the petitioner's evidence did not go to the foundations of the respondent's case but only served to impeach the credibility of the respondent's witnesses.

¶ 65 The relevant factors to be considered in ruling on a motion to reopen proofs support the denial of the motion. The petitioner failed to provide a reasonable excuse for not submitting the evidence from the National Academy of Sciences of the Ukraine during the hearing. There was prejudice to the estate and the maternal heirs; allowing the reopening of proofs in this case would further delay the closing and final distribution of an estate which was opened in 2008. In any event, the petitioner's evidence served only as impeachment of the witnesses' credibility, not the facts to which they testified.

¶ 66 The denial of the petitioner's motion to reopen the proofs was not a clear abuse of the trial court's discretion. We conclude that the trial court did not err when it denied the petitioner's motion to reopen proofs.

¶ 67 IV. Manifest Weight of the Evidence

¶ 68 The petitioner contends that the denial of her motion to amend heirship was against the manifest weight of the evidence.

¶ 69 A. Standard of Review

¶ 70 A reviewing court will not set aside a judgment following a bench trial unless the judgment is against the manifest weight of the evidence. *Brynwood Co. v. Schweisberger*, 393 Ill. App. 3d 339, 351 (2009). A judgment is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence presented. *Brynwood Co.*, 393 Ill. App. 3d at 351.

¶ 71 B. Discussion

¶ 72 As the trier of fact in a bench trial, the court is in a superior position to observe the demeanor of the witnesses while testifying, to judge their credibility and to determine the weight their testimony and the other trial evidence should receive. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 599 (2000). The reviewing court takes questions of testimonial credibility as resolved in favor of the prevailing party and must draw from the evidence all reasonable inferences in support of the judgment. *Wildman, Harrold, Allen & Dixon*, 317 Ill. App. 3d at 599.

¶ 73 The petitioner maintains that the trial court failed to give the appropriate recognition to the Ukrainian public records, which were certified by apostilles. She argues that her certified documents were entitled to more weight than the testimony of Ms. Semenova, who failed to establish her expertise in the field of genealogy research.

¶ 74 We rejected the petitioner's contention that Ms. Semenova was not qualified to testify as an expert witness in genealogy. Her testimony described her investigation of the archival records, the documents she examined and the photographs she took of the records. The results of her investigation and her expertise in the field of genealogy formed the basis for

her conclusion that the petitioner's documents were based on false information contained in the records.

¶ 75    The petitioner further argues that the court in the Ukraine determined her paternal relationship to the decedent and that the documents she acquired after the hearing established that a court proceeding was the only legal way to contest archival records. However, we determined that the denial of comity to the October 4, 2011, order of the Ukrainian court was not an abuse of discretion. We further determined that it was not an abuse of discretion to deny the petitioner's motion to reopen the proofs to admit the documents she now relies on to challenge the denial of her motion to amend heirship.

¶ 76    The petitioner argues that the trial court erred when it found Ms. Semenova and Ms. Schwitz credible witnesses. She claims that Ms. Semenova contradicted her own testimony and had several lapses of knowledge. The petitioner claims that Ms. Schwitz did not have sufficient experience to testify as an expert in genealogy and also presented contradictory testimony.

¶ 77    The petitioner points to the March 28, 2011, letter from the State Committee on Archives of Ukraine which states that documents which Ms. Semenova claimed to have conducted research on were nonexistent. Ms. Semenova testified that using the source codes she was unable to locate those documents, but she then located them in a different record. Moreover, according to the respondent's exhibit No. 14, as a result of the investigation it ordered on December 23, 2011, the State Archives Service of Ukraine ordered the improperly inserted sheets, containing the birth and marriage information relied on by the petitioner, removed from the registrar's books.

¶ 78    Next, the petitioner directs us to Ms. Semenova's testimony on direct examination that there are two sets of record books, and then to her cross-examination where she testified that there was one set of books, but they were kept in two locations at the same time. On direct examination, Ms. Semenova was questioned by the respondent as follows:

"Q. At the beginning of your testimony you stated that the Archives Department keep–during 1900 kept two separate books, the registrars books *** of birth, marriage and death and the Alphabetical Name Index, and that information could be kept in both places, correct?

A. Correct."

¶ 79    On cross-examination, Ms. Semenova was questioned by the petitioner as follows:

"Q. Now, you said there is two sets of books; there's a registrar's books and Alphabetical Index; is that correct?

A. Right."

¶ 80    We find nothing contradictory in Ms. Semenova's testimony as to the number or location of the record books. The petitioner also claims that Ms. Semenova's testimony should be rejected because she could not state when the records were altered and could not present any forensic testimony as to the kind of ink used in 1903. Since Ms. Semenova's knowledge was not above that of a layperson, the petitioner maintains that the trial court erred in relying on her testimony. *Thompson*, 221 Ill. 2d at 428.

¶ 81    While Ms. Semenova acknowledged that she was not familiar with the ink used in 1903, she noted that the color of the ink on the 1903 marriage certificate was smudged and did not match the color of the ink use on any other pages in the record. She also consulted an

archives officer who explained that ink from the earlier period did not smudge. She acknowledged that she was not familiar with the methods used prior to the introduction of the seal or stamp to correct information in the archives.

¶ 82 "Discrepancies, omissions and bias go to the weight of the testimony to be evaluated by the trier of fact." *People v. Rodriguez*, 2012 IL App (1st) 072758-B, ¶ 47. The weight to be given the testimony is the prerogative of the trier of fact, and we will not substitute our judgment for that of the fact finder. *Village of Bull Valley v. Winterpacht*, 2012 IL App (2d) 101192, ¶ 12. The petitioner chose to rely on the "apostilled" documents and presented no witnesses, expert or otherwise, to contradict the testimony of Ms. Semenova. The trial court also reviewed the documents and the photographs of the Ukrainian records taken by Ms. Semenova and was able to compare them with Ms. Semenova's description of them in her testimony. The trial court determined that Ms. Semenova's testimony was supported by the documentation she presented. We find no basis in the record to disturb the trial court's determination that Ms. Semenova was a credible witness.

¶ 83 The same analysis applies to Ms. Schwitz. The petitioner claims that Ms. Schwitz's two years of experience did not qualify her to testify as an expert in this case. She further claims that Ms. Schwitz's testimony was not credible because she did not know for whom she was working. The petitioner failed to object to Ms. Schwitz's testimony and did not cross-examine her. In any event, Ms. Schwitz testified that the committee report was for "our internal office" and explained that it was later forwarded to the Transcarpathian State Administration to be given to prosecutors. Like Ms. Semenova, we find no basis in the record to disturb the trial court's determination that Ms. Schwitz was a credible witness.

¶ 84 We may not overturn a judgment merely because we might disagree with it or, as the trier of fact, we might have come to a different conclusion. *People v. Parcel of Property Commonly Known as 1945 North 31st Street*, 217 Ill. 2d 481, 510 (2005). The reviewing court will uphold a trial court's judgment following a bench trial if there is any evidence supporting it. *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002).

¶ 85 In this case, the trial court's determination that the petitioner failed to prove heirship is supported by the evidence presented and by the witnesses' testimony. Since the opposite conclusion was neither clearly evident nor arbitrary, the denial of the petitioner's motion to amend heirship was not against the manifest weight of the evidence.

¶ 86 V. Denial of Rehearing or Reconsideration

¶ 87 The petitioner contends that the trial court erred when it denied her motion for rehearing or in the alternative, reconsideration.

¶ 88 A. Standard of Review

¶ 89 "[W]here the denial of a motion to reconsider is based on new matters, such as additional facts or new arguments or legal theories that were not presented during the course of the proceedings leading to the issuance of the order being challenged, the abuse of discretion standard applies." *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 330 (2008).

¶ 90                                           B. Discussion

¶ 91          The petitioner argues that the newly discovered evidence entitled her to a rehearing or reconsideration of the court's order denying her motion to amend heirship. To receive a rehearing on the basis of newly discovered evidence, a party must show due diligence and demonstrate that justice was not done. *In re Ashley F.*, 265 Ill. App. 3d 419, 426 (1994).

¶ 92          The petitioner maintains that she was diligent in discovering the new evidence. She points out that her counsel was in communication with the other parties, but there had been no objection raised as to the validity of the documentation she was relying on to prove heirship prior to the hearing.

¶ 93          Our courts have set forth the rationale underlying the requirement that a movant provide a reasonable explanation, justifying why the evidence presented at a motion for reconsideration was not available at the time of the original hearing:

> " ' "Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." ' (Emphasis in original.)" *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 325 (2010) (quoting *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141 (2004), quoting *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248-49 (1991)).

¶ 94          Prior to the hearing, the petitioner was aware that the maternal heirs were contesting the documents she was relying on to prove heirship. While the respondent did not file a response to her motion, the petitioner bore the burden of proof but chose not to conduct discovery to ascertain the respondent's position. In view of the failed attempts to reach a settlement with the maternal heirs, the petitioner could not have been surprised that the hearing on the motion to amend heirship would be a contested one. Yet, the petitioner waited until she lost the motion to obtain and present the newly discovered evidence to the court.

¶ 95          We conclude that the trial court did not abuse its discretion by denying the petitioner's motion for rehearing or reconsideration.

¶ 96                                            CONCLUSION

¶ 97          The judgment of the trial court is affirmed.

¶ 98          Affirmed.